CASSIDY et al. v. PUETT ELECTRICAL
STARTING GATE CORPORATION.

No. 6080.

United States Court of Appeals
Fourth Circuit.

Argued April 19, 1950.

Decided May 25, 1950.

J. Cookman Boyd, Jr., Baltimore, Md..
(J. Stanley Preston, New York City, on
the brief), for appellants.

Daniel L. Morris, New York City (John
W. Avirett, 2d, Baltimore, Md., Arthur V.
Smith, and Curtis, Morris & Safford, New
York City, on the brief), for appellee.

Before PARKER, Chief Judge, and
SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Puett Electrical Starting Gate Corpora-
tion (hereinafter called Puett) owned the
Harris and Whann patents covering elec-
trical starting gates for horse racing.
United Starting Gate Corporation (here-
inafter called United) leased a horse racing
gate of its own manufacture to the Har-
ford Agricultural and Breeders' Associa-
tion (hereinafter called Harford) which
Harford put into use.

Puett, in the United States District Court
of the District of Maryland, instituted a
civil action (No. 4084) against Harford,
alleging that the United gate used by Har-
ford infringed the Harris and Whann
patents. In this action, United intervened.
The District Court, after an extended hear-

ing, entered a decree holding both these two patents (Harris and Whann) valid and holding that the United gate used by Harford infringed the Whann (but not the Harris) patent. An appeal from this decree (No. 6074) is now pending (and has been argued) in our Court. The District Court further entered a sweeping injunction. This injunction provided: *"You* and each of you, your respective officers, employees, associates, and those in privity with or employed by you, are therefore, strictly Enjoined and perpetually restrained from directly or indirectly making, using, leasing, or selling or causing to be made, used, leased, or sold, any starting gates embodying the invention claimed in United States Patent No. 2,435,729, and from in any way infringing any claim of said Patent No. 2,435,729 until the further order of this Court in the premises, under the pains and penalties that may fall thereon. Hereof fail not at your peril."

George Cassidy, then president, director and a large stockholder of United, was also acting under contract as a starter at the Hialeah Race Track (hereinafter called Hialeah) in Florida and was using a United starting gate leased to Hialeah by United. Upon being promptly notified of the decree and injunction of the District Court, Cassidy, acting under advice of counsel, immediately resigned as president and director of United, but continued his activities as starter at Hialeah and continued the use of the United gate. Cassidy had not then sold his stock in United.

Upon a show cause order, a hearing was held in Baltimore, at which Cassidy testified at length. The District Court then held that United and Cassidy (individually) were guilty of contempt in violating the terms of the injunction and a fine of $2,-000 each was imposed upon United and Cassidy individually. The contempt proceeding is before us upon an appeal by United and Cassidy. We treat separately the situations as to the respective appellants.

### United.

From United's brief we copy the reasons advanced by it in an attempt to show there was no violation of the injunction order and no valid basis for the fine imposed on United in pursuance of the District Court's finding that United was guilty of contempt.

"The injunction restrains the defendants, their officers, etc., from making, using, leasing or selling starting gates embodying the invention of the 729 (Harris) patent, or causing any such gates to be made, used, *leased* or sold, or from in any way infringing the 729 patent. 'Infringing' consists only of making, using and selling (U.S.C.Tit. 35, § 40 [35 U.S.C.A. § 40]).

"United has observed faithfully every one of these orders. Since the decree and injunction in the main case it has neither made, used nor sold, nor caused to be made, used or sold, any starting gates embodying the invention of the 729 patent. The only leasing it has done, it did long before even the decision in the main case. It has not caused any leasing to be done since the injunction.

"Nothing in the injunction directs or requires United to do any affirmative act. The injunction therefore did not require United to even attempt to cause Hialeah to discontinue the use of the gates Hialeah had on its premises.

"Under its lease made with United before the interlocutory judgment and injunction, Hialeah was in lawful possession of the starting gates on its premises. The lease was irrevocable by United. Despite anything United could do, Hialeah could lawfully retain the gates and use them to the end of its race meeting then in progress. Hialeah was not a party nor a privy in the main case, and accordingly not bound by the decree and the injunction in it. It knew of the injunction. Nevertheless it had the right to continue to use its gates despite the fact that the District Court in Maryland had found that Harford had infringed the 729 patent by using a like gate. It had the right to its own day in Court, and to have the questions of validity and infringement of the patent passed on by the Courts of its home, Florida. The horses already at the Hialeah meeting had been 'Schooled' in those gates. They were not then trained and ready to start from any but stall gates. Doubtless

the laws of Florida or rules of its local state racing authority required Hialeah to use 'stall' gates. There is nothing in the record to the contrary, and such is usually the case. There is no showing in the record that plaintiff could have substituted its own stall gates for United's on short notice.

"It is obvious therefore that any attempt at persuasion by United would be a mere futile act. Hialeah had notice of the injunction. It had the right to continue to use the gates at the risk of having to pay plaintiff damages in a latter suit if it chose to do so.

"As to legal action by United against Hialeah,—it is obvious that an action by United to replevin the gates was fully answerable by a showing of the lease given by United to Hialeah at a time when United was free to do such leasing.

"Clearly, therefore, there was nothing contemptuous in United's failure to stop the use of the gates at Hialeah."

We are not impressed by these contentions.

An extended conference was held between the District Judge and counsel for all parties in the patent suit in connection with settling the terms of the injunction. Upon the application of the defendants for a writ of supersedeas pending appeal to us, Puett suggested a supersedeas bond in the sum of $300,000. The District Court offered to reduce this amount to $60,000. Defendants then declined to execute the prescribed bond.

We must presume, too, that some equitable arrangement between the parties could have been entered into as to the use of the United gate at the Hialeah Race Track until the end of the current racing season. It seems that defendants made no effort to enter into any such arrangement. Beyond informing Hialeah of the injunction, United did nothing whatever to comply with the injunction. On the contrary, the starting gate at Hialeah was used in precisely the same way it had been used prior to the injunction. With the exception of Cassidy's testimony at the contempt proceeding, United offered nothing to justify its conduct. Whatever may be the precise meaning of "privity" in the injunction order, it is quite clear that after the issuance of the injunction, when the United gate was still being used at Hialeah, there existed between Hialeah and United the legal relation of lessor and lessee of this gate.

Let us suppose that White has a valuable, commercially successful machine patent. Black makes a number of machines infringing the White patent. Black then leases these machines at a large rental to various users. In a patent suit by White against Black, a sweeping injunction is issued against Black. Could Black stand by supinely, claim he is powerless under his leases, and thus evade the injunction? We hardly think so. Yet this is virtually what we are asked by United to hold.

Said the District Judge in his oral opinion: "The whole thing is very clear to this Court, particularly in view of the conferences that were had with counsel before the final decree was signed. It is not a question here, as the Court sees it, of whether the defendant company, United, which has been found to have infringed plaintiff's patent is obligated under the decree to take legal steps to replevin its gates from those to whom the gates had been leased. As respects United itself, the question simply is whether it used all reasonable means, as contemplated by any sensible interpretation of this Court's decree, to see that the Race Track at Hialeah, Florida, and every other track that leased one or more of its gates, refrained from further use of them. It is not a question whether the decree required a legal rescission or termination of those leases. The decree clearly contemplated reasonable action being taken to see that the leases were no longer effective insofar as using the gates of United on any track was concerned. * * * The Court finds that United has failed at the track at Hialeah,— which is the only place we are now concerned with,—to take the ordinary, reasonable steps that the decree of this Court required."

We believe this pronouncement to be both common sense and good law. We

must, therefore, affirm the fine imposed upon United.

## Cassidy.

Cassidy's contention is that after his resignation as president and director of United, he was not subject to the injunction and, therefore, cannot here be fined for contempt. He states, further, that the primary motive for his resignation was to enable him to fulfil his contract as starter at Hialeah and not to evade the injunction. As an evidence of good faith, he pleads that in resigning, he acted on the advice of counsel. He continued, however, as a heavy stockholder of United.

On this point, the District Judge said: "The Court finds it was a mere subterfuge on the part of Cassidy to write his resignation as president of the company. He should not be treated as having actually left the company. Technically, we may assume, for the sake of argument, that he was no longer president after the 23rd of January; but the manner of his resignation was a mere subterfuge. Whether we say that he is or is not still president, he has been acting, as the Court finds upon his own testimony, in connivance with United, with its silent consent, to get around the decree of this Court."

With this we also agree.

There is doubtless some authority which seemingly upholds Cassidy's contention. Thus, in Hoover Co. v. Exchange Vacuum Cleaner Co., D.C., 1 F.Supp. 997, 998, District Judge Patterson stated: "As for Dick, he aided in the sale, but he was not bound personally by the injunction. He was bound by it only so long as he was connected with the old company which had been enjoined *or was in some fashion aiding or acting in collusion with the old company*. The law is settled that, where a corporation, along with 'its officers and agents,' has been enjoined from doing a certain act, an officer or agent who has severed altogether his connection with the corporation does not violate the injunction by doing the act himself or by assisting an outsider to do it. This is for the reason that there is no restraint upon the officer or agent personally, but only as the representative of the enjoined defendant." (Italics ours.)

The rule is also stated by District Judge Green in Mexican Ore Co. v. Mexican Guadalupe Mining Co., C.C.N.J., 47 F. 351, 356: "It is undoubtedly true that an injunction or an enjoining order against a corporation and its officers, although the officers are not named personally, and are not parties to the record in any way, is binding upon them; but the scope of such an injunction or enjoining order is to restrain the officers from doing the act prohibited in their official capacity as an officer of the corporation, *or in their individual capacity, for the benefit or in the interest of the corporation enjoined.*" (Italics ours.)

See, also, the opinion of District Judge Kirkpatrick in Dadirrian v. Gullian, C.C. N.J., 79 F. 784; and the opinion of Circuit Judge Dietrich in Harvey v. Bettis, 9 Cir., 35 F.2d 349. And in none of these cases are the facts altogether similar to the facts and circumstances here surrounding the resignation of Cassidy as president and director of United. Cassidy here, though as a starter he may have been feathering his own individual nest, was clearly acting for the benefit of or in the interest of the corporation enjoined, in which he was a large stockholder. His action in using the gate, therefore, was not that of an ordinary employee of an enjoined corporation whose connection with it has been severed, but of one whose interest in the corporation has been retained and who is acting in its behalf as well as in behalf of another in doing the act which has been enjoined.

For our decision here, we do not think it is necessary for us to make the subtle and, too often, tenuous distinction between criminal contempts and civil contempts. In many instances a contempt possesses some of the attributes of each of the two types. In the instant case, the District Judge said: "It is essential to the proper administration of justice for this Court, in order to maintain its authority and to do equity toward those in whose favor a decree has been rendered, that this Court shall see that its orders are carried out, and if they are not, then to punish those who have

deliberately and without any reasonable excuse disobeyed those orders."

No objection was made to the procedure in the District Court, there was no demand for a jury trial, and the counsel for United and Cassidy (in oral argument before us) have indicated they do not seek a remand of the case to the District Court for a new trial.

We are this day handing down an opinion in the patent case No. 6074, D.C., 182 F.2d 608, out of which the contempt proceeding arose. In that opinion we are reversing the holding of the District Court that the United gate infringed the Whann patent. This, however, in no wise affects the judgment of the District Court that Cassidy and United were guilty of contempt. At the time of the contemptuous acts, the injunction decree was in full force. See United States v. United Mine Workers of America, 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884.

The judgment of the District Court, as to both United and Cassidy, is affirmed.

Affirmed.