**HARFORD AGRICULTURAL & BREEDERS' ASS'N et al. v. PUETT ELECTRICAL STARTING GATE CORPORATION.**

No. 6074.

United States Court of Appeals
Fourth Circuit.

Argued April 19, 1950.

Decided May 25, 1950.

H. Stanley Mansfield, New York City (J. Cookman Boyd, Jr., Baltimore, Md., on the brief), for appellants and cross-appellees.

Daniel L. Morris, New York City (John W. Avirett, 2d, Baltimore, Md., Arthur V. Smith, and Curtis, Morris & Safford, New York City, on the brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Puett Electrical Starting Gate Corporation (hereinafter called Puett) instituted, in the United States District Court for the District of Maryland, a civil action against Harford Agricultural and Breeders' Association (hereinafter called Harford) alleging that a starting gate for race horses used by Harford at Havre de Grace, Maryland, infringed patent No. 2,435,729 (hereinafter called the Whann patent) and patent No. 2,309,952 (hereinafter called the Harris patent). Both of these patents were owned by Puett. United Starting Gate Corporation (hereinafter called United), which had made and leased the accused gate to Harford, intervened as a defendant. Puett also charged United with unfair competition.

After an extended hearing, the District Court dismissed the complaint insofar as the charge of unfair competition, apart from infringement, against United was concerned. The District Court sustained the validity of the claims in suit, namely, 1, 2 and 4 of the Harris patent and all of the six claims of the Whann patent, and then held that Harford and United had infringed all of the six claims of the Whann patent, but that Harford and United had not infringed claims 1, 2 and 4 of the Harris patent.

Puett has appealed that part of the judgment which holds that there was no infringement of claim 1 of the Harris patent. Harford and United, by cross appeals, have appealed that part of the judgment which holds the Whann patent to be valid and infringed by the accused device.

In the earlier days of horse racing in this country a number of methods for keeping the horses in line and starting them fairly were tried but none of these methods worked satisfactorily. Then came the device involved in the present litigation—the closed stall, electrically operated gate structure. This device comprises a long superstructure or overhead, which is supported by wheels at both ends so that the gate structure may be easily moved from place to place on the track. Depending from and perpendicular to this superstructure is a series of partitions forming a plurality of narrow stalls for the horses. At the start of a race, these stalls are closed at both ends by pairs of doors. The two doors at the backs of the stalls, usually termed "backout doors," are relatively rugged and immobile once closed; whereas those at the front of each stall are arranged to be opened individually and automatically by excessive lunges of unruly horses, and to be opened rapidly and simultaneously to insure a fair start when the official starter presses the starting button. These doors at the front of each stall are each pivoted at one side of the end of the stall and arranged to be pulled to and held in open position by strong springs. When in closed position, they are held by some form of holding means or latching mechanism which is operated electrically by pressure of the starter's button to deenergize a solenoid and thus release the latching mechanism to permit the doors to swing open rapidly and simultaneously under the action of the springs. No device of this character, however, met with any commercial success until in 1939 Puett introduced the gate following the teachings of the Harris patent.

The words "right" and "left," as subsequently used in connection with the structures here involved, are employed from the positional standpoint of one facing the front of the structure and facing the heads of the horses about to start from the gates.

### The Harris Patent.

The validity of this patent is not before us. We are here concerned only with the cross-appeal of Puett which questions the holding of the District Court that the accused gate of United does not infringe claim 1 of the Harris patent.

This claim reads: "1. In a race starting gate, the combination of: a pair of gates pivotally supported at the forward part of said starting gate, said gates being swingable from closed position in which said gates are angularly positioned with respect to each other and with their outer ends adjacent each other to an open position in which said gates are in substantial parallelism; latch means for latching said gates in closed position including a first latch for

preventing one gate from moving relative to the other, a second latch for preventing the other gate from moving relative to the first gate, and means for selectively releasing said first latch which permits said first mentioned gate to move relative to the second mentioned gate, whereupon said second latch is automatically released; and means for moving said gates into open position."

We are here dealing with a combination patent. In the light of the prior art, particularly the Comfort patent, No. 1,870,768, (for a starting gate for horse racing, similar in many respects to Harris) and the Bland patent, No. 1,743,875, (a starting gate for dog races), the Harris patent is, in no sense, revolutionary. Also, we might mention the Steele patent, No. 2,193,257, and the Whyte patent, No. 1,545,176.

It will readily be seen that claim 1 of the Harris patent provides for a *dual* latching system, "latch means * * * including a *first* latch. * * * a *second* latch for preventing the other gate from moving relative to the first gate * * *." (Italics ours.) And in the specifications this dual latching system is described in detail. On the other hand, the only latching device of United is a small metal plate, rigidly mounted on the left-hand door, which merely overlays, for a very short distance, the frame of the right-hand door. This flange on the left door, overlapping the front edge of the right door, holds the right door closed, just as the flange on a window shutter holds the companion shutter closed. This rigid mounting of the United plate on the left-hand door prevents any movement of this plate except when the gate moves.

Said the District Judge: "The Harris patent embodies a very much more complicated, double latching mechanism which, therefore, as United claims, cannot under the most liberal doctrine of equivalents be said to approach the simple, rigid, one-piece holding device of United, consisting of a single plate involving no mechanism whatsoever."

And, again: "However, we are not impressed with the rest of the argument just described and advanced by Puett . * * * because we think it transcends all reasona-

ble bounds of the doctrine of equivalents, for the simple reason that it cannot be accurately said that a mere fixed plate is the equivalent of a dual latching device which embraces parts on each door consisting of two distinct units operating in specific interrelation to each other."

We think these expressions of the District Judge are eminently sound and justify our affirming his holding that the accused United gate does not infringe claim 1 of the Harris patent.

Though we do not think it essential, in this connection, other differences between Harris and United may be readily pointed out. Thus, in Harris, the doors of the gate, when closed, are angularly positioned, with the point of the angle away from the horses, while, in United the doors are closed in a flat position, parallel to the big superstructure. In Harris, the magnetic means for holding the latch lever in engagement with the other latch element are positioned on the left-hand gate; while, in United the magnetic means are positioned on the stall partition, not on the gate. This difference in construction between the Harris and United gates calls, in the United gate, for a short crank arm fixed to its pivot post and connected by a rod link that is in turn permanently connected to an armature; while, in Harris, the positioning of the magnetic means on the left-hand door obviates the necessity for the crank arm and rod or link.

We must, therefore, affirm that part of the judgment below which holds that the United gate does not infringe claim 1 of the Harris patent.

### The Whann Patent.

The District Court held the Whann patent valid and infringed by the gate of United, and United has appealed to us.

Claim 3 of the Whann patent, claimed by Puett as the most typical, reads: "A starting gate having a superstructure including a plurality of partitions, a pair of doors between two adjacent partitions, said doors having pivot means and being swingable from a closed position wherein the side edges of said pair of doors farthest from

said pivot means are adjacent to each other, to an open position where the doors are substantially parallel to each other, holding means for holding one of said doors of said pair in closed position, said holding means including: arm means rigidly mounted to said door and extending at an angle from the plane of said door, said arm means having a free end, a member having a pair of ends, means pivotally mounting said member at one of its ends on said free end of said arm means, a solenoid provided with an armature, means attaching said solenoid to a stationary part of said superstructure and means pivotally attaching said armature on a fixed pivot adjacent to said solenoid, the other end of said member being in engagement with said armature when said door is in closed position and during the time said armature is in engagement with said solenoid while being attracted thereby, and a plate member having means adapted to engage the other door and hold the same in closed position when said other door has been moved to closed position."

According to the District Judge this claim: " * * * when separated into its component elements, calls for four basic things: (1) an arm rigidly mounted on the left-hand door and extending at an angle from the plane of that door, this arm having a free end; (2) a member having a pair of ends, with means for pivotally mounting it at one of its ends on the free end of arm (1); (3) a solenoid provided with an armature and means for attaching this solenoid to a stationary part of the superstructure, and also means for pivotally attaching the armature on a fixed pivot adjacent to the solenoid, the other end of member (2) being in engagement with the armature when the left-hand door is in closed position and while the armature is in engagement with the solenoid when magnetized; and (4) a plate member rigidly fixed on the left-hand door with means adapted to engage the right-hand door and hold it in closed position when the left-hand door is moved to and held in similar position when the armature is magnetized."

What has been previously said of the prior art is, of course, applicable here. Then, to avoid the defense of double patenting, the Whann patent must disclose differences when compared with Harris. Unlike Harris, Whann is a paper patent, for no gate following the teachings of Whann has ever been made and put in use.

■ Circuit Judge Chase said, in Thompson v. Westinghouse Electric & Mfg. Co., 2 Cir., 116 F.2d 422, 425: "As no commercial use has been made of the patent in suit it should, though good for what it clearly does cover, not be expanded beyond that." In Wheeling Stamping Co. v. Standard Cap & Molding Co., 4 Cir., 155 F.2d 6, 8, Circuit Judge Dobie stated: "The claims of the patents in suit must be interpreted not literally *in vacuo,* but rather in the light of the specifications." We quote Circuit Judge Chase again, in Carl Braun Inc. v. Kendall-Lamar Corporation, 2 Cir., 116 F.2d 663, 665: "Where general language is used in a claim it is always to be read as limited by what is new as a patentable advance as shown by the specifications." See, also, Scott and Williams v. Whisnant, 4 Cir., 126 F.2d 19, 20; Victor Cooler Door Co. v. Jamison Cold Storage Co., 4 Cir., 44 F.2d 288, 291.

■ The Whann patent, when its claims are narrowly construed, is, we think, valid, though the margin of patentable novelty is rather slender.

Whann differs from Harris in several respects. In place of the complicated dual latching devices just below the middle of the gates in Harris, Whann substitutes a simple claw-like hook on the top of the left-hand gate which engages a small metal strip on the top of the right-hand gate, so that when the gates are closed the right-hand gate is thus held as long as the left-hand gate is shut. In Harris, the magnetic means are positioned on the outside of the left-hand gate, with the obvious disadvantage of providing a severe jolt to the magnetic means when the gates spring open. Whann places the magnetic means on the top of the superstructure, in the middle. Since in Harris, there is no physical connection between the top of the gates and the superstructure, the gates are not as high as in Whann, where the metal strips and the trig-

ger-like releasing device lead from the top of the left-hand gate at approximately the same level as the bottom of the superstructure.

The wide difference between the respective latches employed in Harris and Whann is shown by the description in the Whann patent of a latch with "two engageable parts which accomplish their latching effect by engagement of cooperating shoulders * * * the release of the latch is accomplished by a free movement of at least one of the latch members due to gravity." The methods and mechanical means employed for opening the gates present rather clear cut distinctions.

Whann is similar to the previous Comfort patent in the positioning of the magnetic means on the top of the superstructure, in the middle. We next discuss the differences between these two patents. In Comfort, the gates when shut are not angularly positioned as they are in Whann. The Comfort gates are not so high as in Whann, and Comfort has no latching device whatever on the gates. In Comfort we find the two front gates with a pivotal metal arm extending from each gate, connected by links or other arms, while the armature slides in a guide-way, by means of which contact is made with the electro-magnet mounted on the middle of the superstructure. This feature of the Comfort patent constitutes the most striking distinction between it and the Whann and Harris patents.

This brings us to the correctness of the District Judge's holding that the United gate infringes the Whann patent. With this conclusion of the District Court, we are unable to agree. It is important to emphasize again that the Whann patent is a combination patent and also a paper patent and consequently it must be narrowly construed. We think the District Court interpreted the Whann claims too broadly, that it magnified the similarities of Whann and the accused device and that it minimized the differences between these two gates. A difference in one feature of the two gates might be inconsequential, yet all of these differences, in their totality, make out, we think, a lack of infringement.

In Whann, there is a claw-like hook on the top of the left-hand gate, into which, when the gates are closed, fits a metal strip on the top of the right-hand gate; United has merely a small metal plate on the middle of the left-hand gate which overlaps a part of the right-hand gate, with no engagement. When closed, the two Whann gates are angularly positioned; the United gates are completely closed, parallel to the plane of the superstructure. The gates in Whann are, and must be, much higher than the gates of United; the Whann gates are approximately as high as the superstructure; the gates of United are much lower in height. The smaller United gates are an appreciable distance from the superstructure while the back of the Whann gates almost touches the stall partitions on the superstructure. The springs in Whann are attached to these stall partitions; in United, these springs are attached to the outside of the bottom angular plates, about midway between the superstructure and the gates.

In Whann, the connection between the forward corner of the left-hand gate and the magnetic means on the middle of the top of the superstructure is made by three square metal bars, the bar attached to the gate being braced by another small cylindrical bar. In United, this connection is made by a cylindrical metal bar, below the middle of the left-hand gate, and outside (not above) this gate, and this cylindrical bar is bolted to a metal plate, rigidly affixed to this gate. The suggestion has been made to us that these metal bars of Whann, stretching from the center of the closed gates to the superstructure constitute a disadvantage in that a rearing horse might strike these overhead strips, whereas there is nothing over the heads of the horses in the United gate.

In Whann, when the magnetic means are de-energized as the starter throws the switch, the lower member of the engaged latch falls by gravity, thus releasing its engagement with the upper latch member and allowing the force of the springs to open the gates. No such yieldable engaging latch parts are found in the United gate. Thus, when the Whann gates are open, the rigid square bar and the moving claw-like trigger

mounted thereon remain attached to the left-hand gate, while the lower latching member remains on the superstructure, completely detached from the rigid square bar and its claw-like moving trigger. In United, there is never any detachment between the parts of its mechanism, no movement of any member by gravity. The doors of the United gate are held together solely by the pull of the magnet on its armature and the armature is permanently linked to the left-hand gate. Again in United, the armature does not fall away by gravity upon the de-energizing of the magnet and the consequent opening of the gates; on the contrary, the United armature is pulled upward against the action of gravity.

As the District Judge pointed out, there are unquestioned points of similarity between Whann and United. Of these similarities, it may be said that they lie largely in the field of features disclosed by the prior art. On the other hand, it may be broadly stated that the differences between the two gates are found, for the most part, in the range of what must be claimed by Whann as patentable novelty, or else the validity of the Whann patent cannot be upheld.

To summarize, the judgment of the District Court, insofar as it sustains the validity of the Whann patent, and insofar as it holds that the Harris patent is not infringed by the accused gate of United, is affirmed. The judgment of the District Court is reversed insofar as it holds that the Whann patent is infringed by the United gate.

Affirmed in part; reversed in part.