UNITED STATES of America ex rel. SHELL OIL COMPANY, Appellee,

v.

BARCO CORPORATION and John Barakat, Appellants.

No. 19996.

United States Court of Appeals, Eighth Circuit.

Aug. 13, 1970.

James C. Nemmers, Cedar Rapids, Iowa, for appellants.

John O. Tramontine, Fish & Neave, New York City, for appellee; William J. Barnes, New York City, and Upton B. Kepford, Waterloo, Iowa, on the brief.

Before MATTHES, Chief Judge, and HEANEY and BRIGHT, Circuit Judges.

MATTHES, Chief Judge.

Appellants, the Barco Corporation and its president, John Barakat, were found guilty of criminal contempt of court for disobedience of the district court's order enjoining their further infringement of a patent held by Shell Oil Company (Shell). For the reasons hereinafter expressed, we affirm.

In 1966, Shell instituted a civil action in the district court charging appellants with infringing United States Patent No. 2,956,073 by the manufacture and sale of dimethyl dichloro vinyl phosphate, an agriculture insecticide commonly referred to as DDVP. Prior to trial the parties reached agreement on a settlement, pursuant to which the district court entered a final judgment on December 12, 1966, decreeing that Shell's patent was valid and enforceable and that appellants had infringed it by the manufacture and sale of DDVP, and enjoining appellants from making, selling, or using DDVP or any other compound covered by Shell's patent. Both parties consented to entry of the judgment.

Between December 12, 1966, and January 27, 1969, appellants made 12 sales of DDVP to customers throughout the United States. Shell became aware of one of these sales through a customer, and, as special prosecutor,[1] secured a warrant for the search of appellants' premises. The search produced - documents evidencing the other 11 sales and prompted the district court to issue an order pursuant to Rule 42(b), Fed.R. Crim.P. directing appellants to show cause why they should not be held in criminal contempt of court for willful and deliberate disobedience of the court's injunctive decree.[2] Immediately after service of the show cause order, appellants moved to dismiss the action on the grounds that 18 U.S.C. § 401 did not authorize prosecution for criminal contempt, or alternatively, that, if it did, it was unconstitutionally vague. Appellants' motion was denied as was their request for further ruling on it, and trial to the court was had on May 19 and 20, 1969. On August 26, 1969, the district court filed its order finding appellants guilty of criminal contempt for violating the injunction, and fining each appellant $500.00. From the judgment entered on this order, appellants have appealed.

Before this court, appellants have renewed their objection to the constitutionality of 18 U.S.C. § 401. They also raise two further challenges to their convictions: (1) the claimed violation of the injunction was excused because DDVP was shown by the prior art and therefore in the public domain, (2) the evidence was insufficient to show that appellants' acts were accompanied by the requisite criminal intent.

■ Appellants' constitutional argument is novel and somewhat ingenious. Section 401 provides in pertinent part:

"A court of the United States shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

\* \* \* \* \* \*

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

---

1. Rule 42(b), Fed.R.Crim.P., provides for notification of one charged with criminal contempt not committed in the presence of the court. The rule also authorizes the appointment of an attorney for the special purpose of prosecuting the contempt. In this instance the district court appointed Shell's attorneys.

2. The show cause order also notified appellants that they were subject to fines of $500.00 or imprisonment of 6 months, the maximum punishment permitted under 18 U.S.C. § 1(3) for petty offenses.

The statute has been held to afford the general statutory authority for invocation by the Federal courts of both civil and criminal contempt sanctions. Appellants contend that, because § 401 authorizes both civil and criminal contempt, but fails to distinguish between the two, it is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. They submit that the would-be-contemnor is not afforded notice of the consequences of his conduct, since the character of the contempt is not ascertainable until the court hands down the punishment. As a means of saving § 401, it is suggested that it be construed to authorize only civil contempt, and that 18 U.S.C. § 402 be interpreted to provide the exclusive authority for the punishment of criminal contempt.

We observe at the outset that appellants have exaggerated the lack of notice in the instant proceedings. While it previously may have been true that the character of a contempt proceeding was unknown until after sentencing, it is apparent that under Rule 42(b) the defendant is fully apprised of the criminal nature of the proceedings well before trial.[3] There is no question here as to compliance with Rule 42(b). Clearly, appellants had notice that they were to be prosecuted for criminal contempt of court sometime before trial. Thus, they had ample opportunity to obtain legal counsel and prepare their defense. Moreover, early identification of the proceedings insured that all of the procedural safeguards attaching to a criminal prosecution were afforded appellants. Compare United States v. United Mine Workers, 330 U.S. 258, 295–301, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

The language of § 401 itself is, in our opinion, quite clear and definite. It tersely and concisely provides that a Federal court shall have the power to punish for contempt any person who violates one of its orders. It cannot reasonably be argued that the statute fails to notify persons of the conduct which it prohibits. *See* United States v. National Dairy Products Corp., 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). Plainly, appellants, who consented to entry of the explicit decree enjoining their sale of DDVP, cannot claim that they were uncertain as to what constituted permissible conduct under § 401 and the injunctive order. To this extent the cases cited and relied upon by appellants afford them no comfort.

▮ Nor can it seriously be disputed, appellants' protestations to the contrary notwithstanding,[4] that § 401 plainly authorizes a criminal sanction. Title 18 of the United States Code, in which § 401 is to be found, is exclusively concerned with defining Federal crimes and Federal criminal procedure, and is appropriately so designated. Moreover, it is well established by the case law that § 401 serves as the general statutory authority for punishment of criminal contempt. *See* Bloom v. Illinois, 391 U.S. 194, 203–204, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

▮ We are not persuaded that § 401 is rendered unconstitutionally vague

---

3. Prior to adoption of Rule 42(b), it was possible that the contemnor would be ignorant of the character of the contempt until the punishment was imposed. *See, e.g.,* Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); McCann v. New York Stock Exchange, 80 F.2d 211 (2d Cir. 1935). *See generally,* Moskovitz, Contempt of Injunctions, Civil and Criminal, 43 Col.L. Rev. 780 (1943). As the Advisory Notes reveal, Rule 42(b) was intended to correct this situation by requiring that the show cause order denominate the proceeding as criminal.

4. Appellants' suggested construction of 18 U.S.C. § 402 to the effect that it alone provides the *exclusive* statutory authority for criminal contempt is without merit. Concededly that section is denominated "Contempts constituting crimes." However, it is apparent on reading the section that it was intended to cover contemptuous conduct which also constitutes a crime under Federal or state laws. The section specifically provides that it does not apply to contempts committed in "disobedience of any lawful writ, process * * *," and the legislative history is contrary to appellants' contention.

solely because violators of its prohibitions may be subject to civil contempt in addition or as an alternative to criminal contempt.[5] Appellants direct us to no judicial authority to the contrary, and our own research has led to none. There are many instances in our society when individual action may subject the actor to both criminal and civil sanctions. *See, e.g.,* Loss, Securities Regulation Ch. 11C, § 7(b) (2d ed. 1961); Prosser, Torts, § 2 (2d ed. 1955). Whether the conduct will result in criminal liability, civil liability, or both in most cases, is beyond the knowledge of the actor at the time he engages in the act. It is sufficient for the purpose of due process that the statute or statutes are drawn in such a manner as to notify the actor of the prohibited conduct. United States v. National Dairy Products Corp., *supra.* It is not, in our view, necessary that the actor, at the time he contemplates the act, be certain as to which of the appropriate sanctions will be invoked.

Although not decisive, it is significant that § 401 as presently drawn is substantially similar to the statute enacted in 1831[6] which granted the Federal courts power to punish contempt. In nearly 140 years of existence, § 401 and its predecessors have been invoked by innumerable Federal courts, and in more than a few cases their invocation has been approved by the Supreme Court.[7] To the best of our knowledge, the statute has never been challenged as being unconstitutionally vague, and we are not now persuaded to strike it down on that ground.

Appellants also seek to absolve themselves of criminal liability by contending that DDVP was a compound shown by the prior art and therefore not legally protected by the Shell patent. Their argument rests in part on appellants' assertion that the Harman Patent, one based on an application filed prior to Shell's filing, discloses the process for making DDVP. While appellants concede that they knew of that patent prior to the consent judgment, they urge that it did not legally become prior art until the decision in In re Land, 368 F.2d 866 (CCPA 1966), rendered shortly prior to the consent judgment filed in this case, but not reported until after the judgment.

It is settled law that in a contempt proceeding for the alleged violation of an order entered pursuant to a consent decree enjoining further infringement of a patent the validity of the patent is not in issue, and the decree is not subject to attack. Siebring v. Hansen, 346 F.2d 474 (8th Cir.), cert. denied, 382 U. S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965); Hopp Press, Inc. v. Joseph Freeman & Co., 323 F.2d 636 (2d Cir. 1963); Kiwi Coders Corp. v. Acro Tool & Die Works, 250 F.2d 562 (7th Cir. 1957). The rule rests on principles of *res judicata.* Despite Appellants' claim to the contrary, we believe that the effect of their present contention is to challenge collaterally the district court's

---

5. We observe that § 401 has been construed to require a showing that the criminal contemnor acted with criminal intent. Panico v. United States, 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963); Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957); United States v. United Mine Workers, *supra*; In re D. I. Operating Co., 240 F.Supp. 672 (D. Nev.1965). *See also* Civil and Criminal Contempt in Federal Courts, 17 F.R.D. 167 (1955). Indeed, appellants strenuously argue that this essential element of the offense was not proven by the government at trial. Thus, by virtue of judicial construction, § 401 civil contempt *can* be distinguished from § 401 criminal

contempt at the time of the act. And, in determining whether a statute is sufficiently certain to satisfy due process requirements, it is proper to consider authoritative constructions of the statute. Winters v. New York, 333 U.S. 507, 514, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

6. *See* 4 Stat. 487.

7. Two particularly pertinent cases are United States v. United Mine Workers, *supra*, and Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767, 68 S.Ct. 665, 92 L.Ed. 840 (1925), both of which involved criminal contempt and due process considerations.

prior judgment holding the Shell patent valid and enforceable and precluding appellants from manufacturing or selling DDVP. Accordingly, we hold, even assuming that DDVP was shown by the prior art, that the issue was not properly before the district court and does not serve to excuse appellants' contemptuous conduct.[8]

We have considered the cases cited by appellants, including Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L. Ed.2d 610 (1969), and find them inapposite and not controlling.

■ Lastly, we are asked to reverse the convictions because the evidence allegedly failed to show appellants' criminal intent beyond a reasonable doubt. The essence of appellants' defense at trial was that the 12 sales were made in the good faith belief that they were not violating the court's order. Here, they assert that a sufficient showing of good faith was made to negate a finding that appellants' conduct was accompanied by the requisite criminal intent.

Obviously, this issue presents essentially a question of fact. Appellant Barakat offered the only testimony for the defense relevant to the question of intent. In substance he testified that 10 of the 12 sales were made only after the summer of 1967, when he first received and examined an article published by the United States Department of Health,

Education and Welfare in 1955, which suggested that DDVP was not protected by any patent. However, this article was in the possession of appellants' attorneys prior to entry of the consent judgment and was made a part of the file in that suit. Moreover, the article was published 5 years prior to issuance of Shell's patent and 11 years before the injunctive order. Despite this fact, appellant sought no legal counsel as to his right to rely on the statements contained in the publication. Furthermore, there was substantial and credible evidence presented showing that appellants made the disputed sales covertly and with a conscious effort to conceal both the product's and their own identity. In several instances the DDVP was falsely or ambiguously identified. In another instance the sale was made under the name of a fictitious corporation created by appellant Barakat.

Appellants presented evidence supporting their defense. Manifestly, the district court, the judge of the credibility of the witnesses and the weight to be given their testimony, did not choose to credit appellants' claim of good faith. We are satisfied that the evidence, taken as a whole, is more than adequate to discredit any assertion of good faith and demonstrates beyond a reasonable doubt that appellants intentionally violated the district court's injunctive order.[9]

Affirmed.

---

8. Even if the consent decree *were* subject to collateral attack in the contempt proceeding, we do not believe that appellants' assertion that DDVP was shown by the prior art excuses their otherwise criminally contemptuous conduct. The purpose of criminal contempt is to vindicate the court's authority, and it remains a proper sanction regardless of the correctness of the court's initial decision to issue the injunction. *E. g.*, Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); United

States v. United Mine Workers, *supra*; Hopp Press, Inc. v. Joseph Freeman & Co., *supra*; Cassidy v. Puett Electrical Starting Gate Corp., 182 F.2d 604 (4th Cir. 1950). Here, appellants made no effort to have the court modify its injunction or reopen the judgment, but rather proceeded to violate the court's clear mandate prohibiting the sale of DDVP.

9. See Nilva v. United States, *supra* 352 U.S. at 395, 77 S.Ct. 431, 1 L.Ed.2d 415.