**William Albert KLOTZ, Petitioner,**

v.

**OHIO ADULT PAROLE AUTHORITY, Respondent.**

**Ronald T. SMEDLEY, Petitioner,**

v.

**John GILLIGAN et al., Respondents.**

**Terry HOLLAND, Petitioner,**

v.

**Harold J. CARDWELL, Respondent.**

**Nos. C 71–340, C 71–500, C 71–627.**

United States District Court,
N. D. Ohio, E. D.

Aug. 20, 1971.

William Albert Klotz, Ronald T. Smedley, and Terry Holland, pro se.

William Brown, Atty. Gen., State of Ohio, Columbus, Ohio, for respondents.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

The Court is confronted here with three petitions for habeas corpus relief from persons confined under state custody in Ohio. Two of the petitioners, Klotz and Holland, are in the Ohio Penitentiary, and the third, Smedley, is in the Ohio State Reformatory at Mansfield. Since all three petitions are concerned with the same basic issue, they will be considered together by the Court.

The three petitioners, all convicted of felonies, were released from prison on parole, but later were returned and their parole revoked by the Ohio Adult Parole Authority with no hearing or other opportunity to answer the charges against them. Having no right to appeal this decision under Ohio law, they each have petitioned this Court for a writ of habeas corpus, claiming that they have been deprived of their liberty without due process of law, in violation of the Fourteenth Amendment.

The points raised by the petitioners are serious and substantial ones, and indeed, have been considered by both district and circuit courts on several occasions in recent years. In each case, however, the courts have determined that parole, as an aspect of a state's administration of its penal system, is " * * * exclusively a state function under the reserved powers in the Constitution." Rose v. Haskins, 388 F.2d 91, 93 (6th Cir.1968). The state, it is held, " * * * is not required to provide for parole and, if it does, may stipulate its terms and conditions as well as the status of a parolee." Rose v. Haskins, *supra*. Accordingly, the federal courts have been consistent in their refusal to intervene in questions involving parole revocation. This in turn has made it necessary for them to minimize the importance of the due process questions which have been raised. Parole has been compared to a contractual relationship, in which the parolee agrees to accept, as a condition of his release, the possibility of re-imprisonment without a hearing; alternatively, it has been described as a mere privilege, subject to the whim of the state, rather than as an integral and institutionalized part of the corrections machinery maintained by the state.

All these arguments notwithstanding, it seems apparent to this Court that: " * * * what is involved here is an administrative action of a state agency that adversely affects a parolee's interest in his conditional liberty." Rose v. Haskins, *supra*, dissent of Celebrezze, J., at 98. Whenever that is the case, minimum due process would appear to call for a hearing to determine whether,

both in fact and in law, there is sufficient basis for the proposed parole revocation.

By granting a prisoner release on parole, the Adult Parole Authority has given him his freedom to live outside the penitentiary walls. To hold, then, that this man has no substantial interest in his own freedom, merely because that freedom is termed "conditional," strikes this Court as somewhat anomalous. He certainly would seem to have a vital interest, and one which should not be subject to revocation without due process of law. " * * * [I]t is inconsistent with our whole system of government to grant such uncontrolled power to any officials, particularly over the lives of persons." Report by the President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: Corrections (1967).

Judge Zirpoli of the District Court for the Northern District of California held recently that the state must provide the full panoply of constitutional safeguards to defendants in disciplinary proceedings held at San Quentin Penitentiary. He observed that:

> "While prisoners may have no vested right to a certain type of confinement or certain privileges, it is unrealistic to argue that the withdrawal of those privileges they do have, or the substitution of more burdensome conditions of confinement would not, under their 'set of circumstances,' constitute a 'grievous loss.'"

Clutchette et al. v. Procunier et al., 328 F.Supp. 767 (D.C.N.D.Cal., 1971). Although the circumstances in *Clutchette* were, admittedly, rather different from those present here, the principle there is equally applicable to the cases before this Court—that even a convict has recognizable interests in the conditions and status of his sentence.

■ If, then, a parolee has an interest in the maintenance of even conditional liberty, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287

(1969) would seem to indicate that this liberty must not be terminated without a prior hearing. It has been held that Goldberg v. Kelly does not apply to parole revocation cases, since—unlike welfare—there is said to be no statutory right to parole even where all the prerequisites have been met. See Morrissey v. Brewer, 443 F.2d 942 (8th Cir., 1971, noted in 47 A.B.A.J. 702). To the contrary, however, it is generally recognized that the state may withdraw neither a right nor a privilege arbitrarily or upon unconstitutional grounds. "One may not have a constitutional right to go to Baghdad, but the Government may not prohibit one from going there unless by means consonant with due process of law." Homer v. Richmond, 110 U.S. App.D.C. 226, 292 F.2d 719 (1961). Thus, a parolee may not have any constitutional right to maintain his freedom, but he does have—no less than any other person—a right not to be deprived of that freedom arbitrarily, discriminately, or capriciously.

■ Having recognized this right to a pre-revocation hearing, it would be incongruous for the courts to allow the states to use the reserved powers argument to defend their violation of it. The Tenth Amendment reserves to the states only those powers " * * * not delegated to the United States by the Constitution, nor prohibited by it to the States * * *." Thus, while the ordinary operation of its corrections system is exclusively a state responsibility, the federal courts may and should intervene wherever that operation is conducted in a manner prohibited by the due process clause of the Fourteenth Amendment.

■ Despite serious misgivings about the theoretical underpinnings of Rose v. Haskins, *supra*, it is notable that several more recent cases in this and other circuits have reaffirmed that decision. Note especially Menechino v. Oswald, 430 F.2d 403 (2d Cir., 1970) and Allen v. Perini, 424 F.2d 134 (6th Cir., 1970). But see also Hahn v. Burke, 430 F.2d

1000 (7th Cir., 1970), dealing with probation revocation, and the vigorous dissent of Feinberg, J., in *Menechino, supra,* at 412 of 430 F.2d for indications that support for that view may be waning. Rose v. Haskins remains controlling law in this circuit, though, and accordingly, there would seem to be no alternative but to follow that precedent.

In the light of its foregoing discussion, however, the Court finds that there is probable cause for appeal in these cases, and in fact encourages the petitioners to proceed on appeal to the United States Court of Appeals for the Sixth Circuit. Accordingly, the motions to proceed *in forma pauperis* are granted; the petitions for writs of habeas corpus are denied; and the Court, *sua sponte,* grants certificates of probable cause for appeal.

It is so ordered.