## ACME CARD SYSTEM CO. v. REMINGTON-RAND BUSINESS SERVICE, Inc.
### No. 1785.

District Court, D. Maryland.
Feb. 16, 1933.

J. Kemp Bartlett, of Baltimore, Md., William F. Hall, of Washington, D. C., and Lee J. Gary, of Chicago, Ill., for plaintiff.

J. H. Skeen, of Baltimore, Md., and Barton A. Bean, Richard W. Treverton, and Edwin T. Bean, all of Buffalo, N. Y., for defendant.

WILLIAM C. COLEMAN, District Judge.

This case involves three patents relating to listing devices, or more particularly to so-

called "visible indices": Two patents to Powell, No. 1,594,112, application filed July 14, 1922, issued July 27, 1926, and No. 1,683,207, application filed July 14, 1922, issued September 4, 1928, relating to flexible index strips; and a third patent to Soans, No. 1,394,231, application filed May 28, 1914, issued October 18, 1921, relating to a device for holding these index strips.

In the first of the Powell patents, only two claims, Nos. 1 and 6, are here involved; in the second Powell patent, also, only two claims are involved, Nos. 3 and 4; and in the Soans patent, only one claim, the first one, is here involved. These five claims read as follows:

Powell No. 1,594,112:

Claim 1. "Flexible index strips in continuous sheet form, comprising wood veneer faced and backed with paper and partially scored in the direction of their depth, thus permitting subsequent separation into individual resilient index strips."

Claim 6. "Flexible index strips in continuous sheet form, comprising a thin body portion of wood faced and backed with paper and scored through one paper surface and through the wood surface, leaving the paper upon the opposite surface intact, thus permitting subsequent separation into individual resilient index strips."

Powell No. 1,683,207:

Claim 3. "Separated flexible index strips comprising strips of wood faced with paper."

Claim 4. "Separated flexible index strips comprising strips of wood faced and backed with paper."

Soans No. 1,394,231: Claim 1. "In a holder for members adapted to be removably retained by springing their edge under a flange, the combination with a central web, of a marginal member secured to said web, said marginal member having depressed central portions engaging opposite faces of the web, a head member adapted to inclose and protect the edge of the web and an inwardly extending offset flange spaced from the web to receive the end of a member to be held."

The jurisdiction of this court to hear this case was originally questioned, and again raised at this hearing, but the court concludes that what it said at the first hearing on the motion to dismiss the bill of complaint— that is, what it said on June 22, 1931—is correct, and, therefore, the court reiterates that the taking of jurisdiction has been proper in the present case.

Taking up the patents in the two groups, that is the Powell patents first, and the Soans patent second, there is an initial question which arises with respect to the Powell patents which should be first disposed of. That is the question as to whether or not the earlier Powell patent, that is, patent No. 1,594,112, invalidates the later one, No. 1,683,207. Prima facie, it would seem that such was the case, because while it is permissible to split an original application and to have the two resulting patents issued thereon valid, such splitting or division must serve some reasonable purpose, namely, must show a separation of claims that are in fact different and not merely repetition or duplication. In the present case we find that there is, in fact, no separation because the text of the specifications is identical in both patents, and, also, while all of the claims of the earlier patent speak only of flexible index strips, the specifications expressly speak of separated flexible index strips—lines 48 to 53: "Upon removal from the typewriter, the strips may be torn from the sheet singly, or in numbers, and inserted into the frame by doubling the flexible or resilient strips and inserting therein beneath the side flange 2, on the frame." It is further true that specifications and claims must harmonize. That is, we may and should turn to the specifications to see what the claims really mean, and the one should not be contradictory of the other.

The foregoing are the prima facie arguments in favor of holding that the plaintiff here is entitled to only one of these patents. However, equitable principles would seem to lead to a contrary result, in view of the fact that plaintiff was led into this situation by the suggestion or requirement of the Patent Office. Whatever may be the advantage it may have by the possession of these two separate patents, under the circumstances, plaintiff should not suffer because of the division. That is, the circumstances offset or rebut the prima facie argument that the earlier patent invalidates the later patent.

Coming now to the primary features of the case, infringement has been conceded by the defendant company, and reliance is therefore placed upon the claim of invalidity of the patents by reason of the prior art, and upon the other special defenses which will be referred to later.

The Powell patents are found to be valid for the following reasons: The burden of proving invalidity is upon the defendant. I find that this burden has not been sustained because I find that when we summarize the evidence with respect to prior art patents, the most that is disclosed is the following: The use of paper, cardboard, fiber, celluloid, or other composition materials, scored, as are the strips in the present case and used for the same purpose, because when we examine the prior art patents that relate to wood veneer, although we find that this medium was known to the prior art and faced and backed with paper, there is in evidence no patent indicating that wood veneer was ever scored in that condition, or ever used for the purpose with which we are here concerned. I believe that that is a correct, very brief, summary of what the patent evidence in the present case shows. It is unnecessary, therefore, to analyze in any detail the various prior art patents that have been cited, except to say that the patent most favorable to the contention of defendant would seem to be the Weber patent, No. 310,758, the Rand patent, No. 1,462,497, and the Haddan British patent, No. 5422; but as above explained, I do not find that any of them go further than I have just outlined.

If this be a fact, then I have no difficulty in reaching the conclusion that we have in the present case not merely a substitution of material old in the art, but we have the use of that old material in a way which creates a novelty and a utility not heretofore disclosed in the art by any of these patents. If that be true, then it seems to me that the rule, as stated by the Supreme Court a number of times, makes it perfectly clear that there is sufficient novelty in the Powell patent. What the Supreme Court has said may be summarized as follows: Merely substituting superior for inferior materials may not be patentable invention, although the substitution may be of materials that are both new and useful in high degree; but if the substitution involves a new mode of construction, or if it develops new properties and uses in the art, or produces a new mode of operation, or results in a new function, or if it represents the first practical success in the art in which the substitution is made, or where there is superiority in the substitution by reason of greater cheapness and utility and also in more efficient action or functioning, that may amount to invention. See analysis of cases in Berry v. Robertson (D. C.) 40 F.(2d) 915.

So much for what the prior patents appear to disclose. Taking up next the question of prior use, I find no prior use, other than the isolated case of the manufacture and sale, prior to the application of the Powell patents, by the plaintiff company itself.

Coming now to what may be called one of the special defenses of the defendant, namely, that after all, Mr. Powell did not invent this new strip, I find that the weight of the evidence clearly does not support that argument. I am loath to believe that Mr. Powell, or the two Messrs. Klostermann, were not telling the truth when they were in substantial agreement that Mr. Powell was the sole inventor and that the others were helping him to experiment, make certain developments, but that it was originally his conception which, as he explained, came to him one day when he saw a butter dish made of cheap veneer wood. That gave him the idea for the greater resiliency which paper, or fiber, had not afforded, and which had caused the rejection of the inferior device by his employer in the Acme Company when it was shown to him. In the absence of some direct evidence which would indicate that this testimony is not to be believed as to the true conception of the basic idea, I am forced to the conclusion that Powell was the real inventor of this device. I think any other conclusion would lead to a rejection of evidence which would be entirely improper under the circumstances, and would attribute to witnesses motives that I do not find, after listening to their statements.

In view of what has already been said, it is scarcely necessary to elaborate further upon the greater utility of this device over the prior art. Certainly, there appeared for the first time in the art a resiliency which did not exist. That was the great asset, the great value, as I see the device. It was simple, but no one had thought of it before, and the cases are replete with the announcement of the principle that the one who thinks of the thing first, be it ever so simple, is the one who ought to be rewarded, provided the conception is accompanied with utility. I think the evidence is ample to show that there is real utility, and were there any doubt as to the patentability of the device here in issue, I would be compelled to resolve that doubt in favor of the plaintiff because of the commercial success of the device, as indicated by the testimony, which is not contradicted.

So much for the Powell patents. Now, turning to the last, or Soans, patent, I

find that there is somewhat more difficulty with respect to it, because of the very technical, or narrow, character of the distinction in the constructions that are permissible under the patent. At first blush this patent would appear to be anticipated by Rudolph No. 499,441, but I am inclined to conclude that the distinction is valid in law, although admittedly very narrow, and, shorn of technical terms, it may be described as follows: In the Rudolph patent the end pieces, which fit over the web, call for additional strips which are nonexistent in the Soans patent. The Patent Office had the Rudolph patent before it as a reference, and that raises a prima facie presumption of patentability, rebuttable, to be sure; but I am not disposed to declare that it has been rebutted in a case of this kind unless there is clear evidence that the Patent Office, with its technical experts, was wrong. The Rudolph patent is not double-ended, so to speak, as is the Soans patent; but I do not think that, in itself, is very material one way or the other, and I rest the distinction upon the absence of the strips, as just stated. I am not willing to accept the argument of the defendant that the construction under the Soans patent does not permit of some modification with respect to how far the web goes through the end pieces. That brings us finally to the question as to whether or not, even though the Soans patent is valid, it has been infringed by the defendant's device. I conclude that it has, because I think that the defendant's device is, for all intents and purposes, a duplication of the plaintiff's device, made on a somewhat smaller and lighter scale and, perhaps, with the desire to make it appear a little bit different, but the fundamental construction, when analyzed, is substantially the same.

I find that both the plaintiff's and defendant's device is constructed in sufficient compliance with the specifications and drawings of the Soans patent, and to hold that the defendant's device does not infringe because the webbing does not go through as far as the drawing in the Soans patent calls for, or because the end pieces are somewhat differently constructed in minor details, seems to me to be splitting hairs, and not justified under a proper interpretation of the law of patents governing articles of this kind, which are not mechanical, and which do not require, therefore, the same sort of highly technical, meticulous distinctions that some mechanical devices might call for.

An order will be signed in accordance with this opinion.