**SCOTT & WILLIAMS, Inc., v. WHISNANT et al.**

No. 4881.

Circuit Court of Appeals, Fourth Circuit.

Feb. 17, 1942.

Charles H. Howson, of Philadelphia, Pa. (Hubert A. Howson, of New York City, George H. Ward, of Asheville, N. C., Howson & Howson, of Philadelphia, Pa., and Jones, Ward & Jones, of Asheville, N. C., on the brief), for appellant.

Henry N. Paul, Jr., and Henry N. Paul, both of Philadelphia, Pa. (Joseph L. Murphy, Jr., of Hickory, N. C., and Paul & Paul and John H. Austin, all of Philadelphia, Pa., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the District Court for the Western District of North Carolina, District Judge Webb sitting. The judgment was in favor of the defendants and the court held, in an action for alleged infringement, that the patent in suit, Letters Patent No. 1,615,807, as to Claims 4 and 5 thereof, is invalid and not infringed.

In arriving at his decision, Judge Webb decided in favor of the defendants all four of the major issues involved. He decided: (1) The patent in suit is invalid under the prior art, particularly in the light of the Robinson patent, No. 1,428,398; (2) the amendments to the original application for the patent in suit involved material additions and these amendments were invalid, since they were not accompanied by the required supplemental oath; (3) the attachments used by the defendants do not infringe Claims 4 and 5 of the patent in suit; (4) the invention of the patent in suit is not embodied in the "Banner" wrap stripe machines and wrap stripe attachments made and sold by the Hemphill Company under license from the plaintiff.

Though all of these issues are important, we shall limit ourselves to a discussion of Judge Webb's decision on the third point. We think that is the most vital point in the case. Since, too, we believe that Judge Webb was clearly correct in holding that defendants' machine was not an infringement of the patent in suit, that is sufficient to dispose of the case and justifies us in affirming the judgment of the court below.

Claims 4 and 5 of the patent in suit read:

"4. In a striping attachment for a circular knitting machine having a revolving needle cylinder, revolving yarn guides arranged in a circle of smaller diameter than the circle of cylinder needles, said yarn guides being adapted to be swung as a unit till their circle overlaps the needle circle and then feed yarn to the needles substantially as described.

"5. In a circular knitting machine having a revolving needle cylinder, a bobbin stand adapted to revolve at the same angular speed as the needle cylinder, and yarn guides mounted on said stand in a circle of lesser diameter than the circle of cylinder needles, in combination with means adapted to shift the position of the axis of the stand and thereby cause said yarn guides to wrap yarns around the needles, substantially as described."

It is elementary in the law of patents that claims must be read and interpreted in the light of specifications. In Acme Card System Co. v. Remington, etc., Service, D.C., 3 F.Supp. 254, 255, it was said: "It is further true that specifications and claims must harmonize. That is, we may and should turn to the specifications to see what the claims really mean, and the one should not be contradictory of the other."

Pertinent here, too, is an observation in Callison v. Pickens, 10 Cir., 77 F.2d 62, 64: "If the words are construed to include every method of accomplishing the result, the claim is invalid for indefiniteness and uncertainty. A claim, alone or in light of the specifications, must describe a

concrete apparatus, not an abstract function."

See, also, Seymour v. Osborne, 11 Wall. 516, 547, 20 L.Ed. 33; O. H. Jewell Filter Co. v. Jackson, 8 Cir., 140 F. 340, 344, 345; R. M. Hollingshead Co. v. Bassick Mfg. Co., 6 Cir., 73 F.2d 543, 546; Jensen-Salsbery Laboratories v. O. M. Franklin Blackleg Serum Co., 10 Cir., 74 F.2d 501.

The vital part of the specifications in the patent in suit is found on Page 2 of the patent, column 1, lines 41-56: "This holds the bobbin stand and striping yarn guides to the right till the yarn guide circle just overlaps the needle circle. As the yarn guides revolve they are adjusted to cross the circle of needles just ahead of the corresponding striping needles. The striping yarn comes from inside the needle circle and lies across the path of the raised needle or needles which is moving faster than the striping yarn guide because it is moving in a larger circle. The needle or needles therefore pass the yarn guide, the yarn guide crosses back inside the needle circle as the two circles revolve and the thread is thus wrapped around the needle."

It is important to note in this connection that in the original application for the patent in suit it was stated "the circle made by the yarn changing fingers is in an *internally tangent* position in relation to the circle formed by the needles." (Italics ours.)

See Figure 1:

Figure 1.
Bosch's Original Application for the Patent in Suit.

Internally Tangent Circles

In this position the yarn fingers can feed yarn to the needles only if projected and retracted by cams.

Subsequently the application was amended to require the circle of the yarn changing fingers to *overlap* the needle circle.

In the Bosch machine (the patent in suit), the yarn guide, in the operative position, is mounted above the needle circle in a horizontal position. In the defendants' machine (Coleman and Hunt patent), the yarn guide is completely outside the needle circle and is placed to the side of the needle circle in a vertical position.

The very essence of the Bosch patent is the overlapping of the two circles—the yarn guide circle and the needle circle. In the specifications of this patent, it is stated at least six times (See Specifications of Patent, page 2, lines 7, 12, 34, 43, 78, 83) that the circle of striping yarn guides *overlaps* the circle of needles; and it is further stated in these specifications (lines 80-81) "the yarn guides can wrap the striping yarns around the needles *only when the yarn guide and needle circles overlap as described."* (Italics ours). Further, we find: "The striping yarn comes from inside the needle circle." (Specifications, page 2, lines 47, 48) and later "the yarn guide crosses back inside the needle circle as the two circles revolve." (Specifications, page 2, lines 53–55). In other words, the yarn guide twice crosses the needle circle (which is the result of the overlapping of the two revolving circles) and thus the yarn guide performs its two functions: (1) When outside the needle circle, the yard guide *feeds* the striping yarn; (2) by twice crossing the needle circle, the yarn guide *wraps* the yarn around the needle. See Figure 2:

Figure 2.
Bosch's Patent

Overlapping Circles

[The smaller circle is the circle of the yarn guide, the larger circle is the circle of the needles.]

When these circles thus overlap each yarn finger travels for a time *outside* the needle cylinder and feeds its yarn to a striping needle, and for the rest of the time travels *inside* the needle cylinder and so wraps its yarn around the back of the striping needle.

The machine of the defendants (Coleman and Hunt patent) was developed on the idea that the yarn guide, if held stationary or nearly stationary (completely outside, and never inside, the needle circle), could feed the striping yarn, and that the rotation of the needle cylinder (carrying with it the striping needle) could compel the striping needle to turn around once for each rotation; thus, the needle would wrap itself with the striping yarn. The essential feature of the Bosch machine, the overlapping of the yarn guide circle and the needle circle, is thus completely absent in the machine of defendants. See Figure 3:

Figure 3.

Defendants' Machine

External Yarn Guides

In defendants' machine the yarn guide circle is outside the needle cylinder and in a vertical plane. It therefore never "overlaps the needle circle" as required by claim 4 of the Bosch patent. Nor do its yarn guides ever "wrap yarns around the needles" as required by claim 5.

To sum up briefly, in the machine of plaintiff, the striping finger of the yarn guide essentially does the wrapping of the striping yarn; in the machine of the defendants, it is essentially the needle cylinder that does the wrapping. In the plaintiff's machine, the yarn guide is above the needle cylinder; in the machine of defendants, the yarn guide is at the side of the needle circle. In the machine of plaintiff, the axis of the yarn guide is vertical; in the machine of defendants it is horizontal. These differences are neither adventitious nor minor; the resulting modus operandi of each machine presents striking differences when contrasted with the other. We accordingly agree with Judge Webb that the machine of the defendant does not infringe the patent of the plaintiff.

Plaintiff strenuously contends that the striping yarn is fed to the needles in sub-stantially the same manner, whether the axis of the yarn guide be in a vertical position or in a horizontal position. The answer to this is that moving a yarn finger around a needle so that the yarn finger wraps the striping yarn around the needle is an operation quite different from so positioning the finger of the yarn guide that this delivers the striping yarn to the turning needle in such a way that the needle wraps around itself the striping yarn. Nor is plaintiff helped by the assertion (whatever may be the measure of its accuracy) that in both devices, that of plaintiff and that of defendants, the required wrapping of the striping yarn is really effected by the combined movements of both the yarn guide and the needles.

Plaintiff contends that defendants' improvements are merely simple and elementary modifications of plaintiff's machine. After a new invention is completed, it is then very easy to see how it was accomplished. But such enlightenment, resembling apparent simplicity, is the product of hindsight. In point of fact, defendants' invention was not easy. Courage, ingenuity and sustained study led to three or four failures before it was established that the theory of defendants was really practicable. Before defendants' machine was produced, the art seems to have supposed that as soon as the circle of yarn fingers ceased to overlap the needle circle, the machine could not wrap and would become inoperative. That it does not thus become inoperative is due to the fact that a new and hitherto undevised method of operation is involved. The device of the defendants is thus not a mere improvement on the machine of the plaintiff; but the machine of defendants proceeds upon an entirely different principle of operation. Under such circumstances, there can be no infringement.

The defendants claim that the equities in this case are all with them "by reason of the utterly unfruitful and stillborn claims of Bosch". It is not necessary for us to go that far. It appears to be true, however, that no machine has been sold and operated under the Bosch patent. The "Banner" machine was made by the Hemphill Company (a former rival of plaintiff) under claim that it was invented by one Lawson, with no substantial evidence in the record to show that, when the "Banner" wrap striper was produced, either Lawson or the Hemphill Company had any knowl-

edge of the Bosch machine. Plaintiff brought an action against the Hemphill Company, based on the alleged infringement of the Bosch patent by the "Banner" machine. This action languished in court for years and was finally settled by compromise. Hemphill paid a substantial sum of money to plaintiff and cross-licenses under all of the striping patents of both of these large and influential companies were exchanged between the Hemphill Company and the plaintiff. And the "Banner" machines, though containing a name plate with the numbers and dates of many patents, yet carry no notice, name, number or date of the Bosch patent. No other license under the Bosch patent has ever been granted by plaintiff.

Again, the record makes clear that the Bosch patent is in no sense basic or revolutionary. At best, it is no more than an ingenious improvement in a crowded field. In spite of extravagant claims made for the patent in suit by plaintiff's counsel, the record does not adequately disclose any great practical advantages of the Bosch machine in such essential factors as speed, efficiency or low cost.

In the light of these considerations, we believe that, at the very least, we are justified in giving to the claims of the patent in suit and to the wording of the specifications, a narrow rather than a liberal interpretation. See Deering v. Winona Harvester Works, 155 U.S. 286, 295, 15 S.Ct. 118, 39 L.Ed. 153; Dillon Co. v. Continental Supply Co., 10 Cir., 98 F.2d 581, 587. Cf. Cuno Engineering Corp. v. The Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. ——, decided by U. S. Supreme Court November 10, 1941; Morton Salt Co. v. G. S. Suppiger Co., 62 S.Ct. 402, 86 L.Ed. ——, decided by U. S. Supreme Court, January 5, 1942.

Finally, we are not impressed by the contention of plaintiff that the differences between the Bosch machine and the machine of defendants are verbal rather than real, that these distinctions lack substance and are mere shadowy statements in technical jargon. Patent specifications and descriptions of complicated machines cannot well be adequately phrased in the simple vocabulary of Mother Goose or Peter Rabbit.

We, accordingly, affirm the judgment of the District Court.

Affirmed.