**MORPUL, INC., Plaintiff,**

v.

**GLEN RAVEN KNITTING MILL, INC., Defendant.**

**No. C-217-G-63.**

United States District Court
M. D. North Carolina,
Greensboro Division.

Feb. 11, 1965.

---

Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., for plaintiff.

McLendon, Brim, Holderness & Brooks, Greensboro, N. C., and Mason,

Fenwick & Lawrence, Washington, D. C., for defendant.

GORDON, District Judge.

### Case History

The plaintiff, on December 3, 1963, filed a complaint alleging that the defendant by the manufacture and sale of a combination garment consisting of a pair of ladies' stockings and underpants unitarily formed was infringing United States Patent No. RE 25,360, a reissue patent owned by the plaintiff by assignment from Tightpat, Inc., and having been issued to Tightpat, Inc., on March 26, 1963, as assignee from Ernest G. Rice, the inventor. Further, the complaint states, that the plaintiff is the owner of United States Patent No. 2,-826,760, issued on March 18, 1958, and from which the reissue patent No. RE 25,360 was issued. By answer filed January 23, 1964, the defendant denied infringement and alleged that patent No. 2,826,760 was no longer in force for the reason that the same was required by law to be surrendered as a condition precedent to issuance of reissue patent No. RE 25,360. Further, the defendant alleged in its answer that reissue patent No. RE 25,360 is invalid and void, and counterclaimed for a declaration of non-infringement and invalidity of the plaintiff's patent.

On October 19, 1964, the defendant filed a motion for summary judgment and contends therein that, as a matter of law, from the pleadings, interrogatories, depositions and exhibits on file with the court, it is clear that the defendant has not infringed the plaintiff's patent and hence there is no genuine issue of material fact for determination. Therefore, the question presented by the motion, and for determination by the Court, is as to whether from the record the defendant is entitled to summary judgment on the basis of non-infringement, the question of the validity of the plaintiff's patent not being presented in defendant's motion for summary judgment.

522

*Applicability of Motion for Summary Judgment*

█ The cases unquestionably evidence reluctance on the part of courts to grant summary judgment, especially in patent cases where a decision often demands expert testimony of a highly technical nature. This Court is cognizant of the rule that summary judgment is an extreme and drastic remedy and should be cautiously invoked, but nevertheless it is as much the duty of the court to grant the motion where there is no genuine issue as to any material fact as it is the duty of the court to disallow the motion where there is such an issue.

While the Court of Appeals for the Fourth Circuit has often alluded to the fact that the standard laid down for district courts for passing on motions for summary judgment is strict, our Court of Appeals has on various occasions upheld the granting of the motion where it is clear that no issue of fact is involved and inquiry into the facts is not necessary to clarify the application of the law. Thus, in Smith v. General Foundry Machine Co., 4 Cir., 174 F.2d 147, 151 (1949), cert. den., 338 U.S. 869, 70 S.Ct. 144, 94 L.Ed. 533 (1949), which case has been cited by both parties for various patent principles, Judge Soper, with reference to disposing of a patent infringement action by summary judgment stated:

"The plaintiff makes the additional point that there is no precedent in this court for disposing of a question of patent infringement by summary judgment. The practice, however, is not unknown and is properly adopted where as provided in Federal Rules of Civil Procedure, rule 56(c), 28 U.S.C.A., there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. See Frederick Hart & Co., Inc., v. Recordgraph Corp., 3 Cir., 169 F.2d 580; Allen v. Radio Corporation of America, D.C.Del., 47 F.Supp. 244; Rubinstein v. Silex Co., D.C.S.D.

N.Y., 73 F.Supp. 336; S. R. Leon, Inc. v. Parfums Schiaparelli, Inc., D.C.S.D.N.Y., 35 F.Supp. 641; John T. McCoy, Inc. v. Schuster, D.C. S.D.N.Y., 44 F.Supp. 499; Brown v. Ford Motor Co., D.C.E.D.Mich., 57 F.Supp. 825; Juniper Mills, Inc. v. J. W. Landenberger & Co., D.C. E.D.Pa., 6 F.R.D. 463."

In Friedlander v. Union, 150 F.Supp. 849 (D.C.Md.1957), Smith v. General Foundry Machine Co., supra, was discussed and applied by Judge Watkins in a case involving infringement. The history of summary judgment procedure shows that it is intended to permit "a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried." 6 Moore's Federal Practice § 56.04(1). The cases wherein summary judgment has not been allowed in infringement cases appear not to engraft as related to patent infringement any exception to Rule 56, Fed.Rules Civ.Proc., 28 U.S. C.A.

█ The question here presented, that of interpreting the patent claim, is not a question to be decided by expert testimony as the pleadings, answer to interrogatories, depositions and exhibits show clearly that there is no genuine issue as to any material fact, and the Court concludes that this is a proper case for summary judgment. It is not conceivable that expert testimony could alter the record in this case, which record is replete with information as to the precise construction of the garment of the defendant and the construction of the garment of the plaintiff pursuant to its patent, neither construction being of a highly technical and intricate nature.

*Facts and Legal Principles as Applied by Court*

Before the Court for its consideration is the file history of reissue patent No. RE 25,360, certified as a true copy by the United States Patent Office, along

with a copy of patent No. 2,826,760, the predecessor patent to patent No. RE 25,360. This file history reflects the particulars of what transpired in the Patent Office during the prosecution of the application for the reissue patent in suit.

It is revealed by the patent history that the original patent, No. 2,826,760, contained a single claim, which claim was repeated verbatim in the reissue patent, No. RE 25,360, as the single claim allowed in the reissue patent, except for two minor changes. The claim, with the changes in the reissue patent, No. RE 25,360, indicated by enclosing in parenthesis the words in the original patent claim, No. 2,826,760, which were replaced by the words italicized in the reissue claim, patent No. RE 25,360, is as follows:

"A combination panty and stocking formed from circularly knit fabric comprising a pair of stockings of seamless knit construction having foot, leg and welt portions said welt portions being knit of stretchable yarn and adapted to extend above the knee to the waist of the wearer, said welts each having a longitudinal (seam) *slit* intermediate the front and rear of the stocking, said first and second stockings being oriented to position the longitudinal (seams) *slits* adjacent each other, and a seam binding the corresponding front and rear edges formed by the longitudinal slits to form a U-shaped seam intermediate a single enlarged welt and defining a panty."

As stated in the reissue patent, No. RE 25,360, except for the substitution of the words above italicized in the reissue patent for the words bracketed, the claim in the reissue patent in suit is the same as the claim in the original patent, No. 2,826,760.

The defendant's garment, which the plaintiff alleges is an infringement on its patent, is a combination garment, referred to in the trade as "Panti-Legs," consisting of a pair of circular knit seamless stockings, with a foot, leg and individual welt portions integrally combined with an upper enlarged tubular or welt section that is knit as a continuation of the individual stocking welts, and with the upper enlarged tubular or welt section of each stocking after knitting being slit longitudinally and the edges of the slits then positioned and seamed to form a pair of underpants with a diamond shaped crotch portion seamed into the crotch area, and with the edges of the slits of the respective stockings not being continuously joined by reason of the intervening crotch piece.

The crotch insert is made of similar yarn to that of the yarn comprising the pant portion, and is a diamond shaped configuration measuring approximately 6 inches in length and 4 inches in width. In the rear the crotch piece goes to within approximately 6 inches of the elastic waist band and in the front to within approximately 8 inches of the waist band. Thus it is apparent that there are four sides to the crotch piece which must be seamed. Also, a seam must go from the crotch piece to the waist band in the rear and likewise from the crotch piece to the waist band in the front. Hence, there is a group of seams which cannot be said to form "a U-shaped seam binding the corresponding edges." A seam binds the "corresponding edges" at the points below the waist band, front and rear, but the claim does not provide that the "seam" merely bind the slits at some point.

The main purpose of the crotch piece is to give greater comfort and latitude for varying hip sizes.

The language of the claim following the last comma is the only part that brings this controversy before the Court, which language reads *"and a seam binding the corresponding front and rear edges formed by the longitudinal slits to form a U-shaped seam intermediate a single enlarged welt and defining a panty."* (italics added) The other and preceding portions of the claim are admitted by the defendant to be present in its garment.

The record reflects that in the proceedings for the reissue patent, No. RE 25,-360, five (5) claims were sought. Claim 1 repeated the language of the original claim contained in Patent No. 2,826,760 with the exception of the use of the word "slit" for the word "seam" as hereinbefore specifically quoted. Claims 2, 3, 4 and 5, all disallowed by the United States Patent Office Board of Appeals, attempted in the final clause of each of the claims to insert the word "means" instead of the word "seam" as the procedure for binding and/or connecting the longitudinal slits. The claims are as follows:

### "REJECTED CLAIMS OF RICE REISSUE APPLICATION

#### "CLAIM 2

"A combination panty and stocking formed from circularly knit fabric comprising

a pair of stockings of seamless knit contruction having foot, leg and welt portions,

said welt portions at least being knit of stretchable yarn and adapted to extend (on the leg from) above the knee to the waist of the wearer,

said welts each having a longitudinal slit intermediate the front and rear of the stocking,

said pair of stockings being oriented to position the longitudinal slits adjacent each other,

and means connecting the corresponding front and rear edges formed by the longitudinal slits to form the panty portion of the garment.

#### "CLAIM 3

"A combination panty and stocking garment formed from circularly knit fabric comprising

a pair of stockings of seamless knit construction having foot, leg and welt portions,

said foot, leg and welt portions being knit of stretchable yarn, said welt portions being adapted to ex-

tend (on the leg from) above the knee to the waist of the wearer,

and each of said welts having a longitudinal slit intermediate the front and rear of the stocking,

said pair of stockings being oriented to position the longitudinal slits adjacent each other,

and means connecting the corresponding front and rear edges formed by the longitudinal slits to form the panty portion of the garment.

#### "CLAIM 4

"A combination panty and stocking garment formed from circularly knit fabric comprising

a pair of stockings of seamless knit construction having foot, leg and welt portions,

said welt portions at least being knit of stretchable yarn and adapted to extend (on the leg from) above the knee to the waist of a wearer,

each of said welt portions having a longitudinal slit cut intermediate the front and rear of each stocking,

said pair of stockings being oriented to position the longitudinal slits adjacent each other,

and means connecting the corresponding front and rear edges formed by the longitudinal slits thereby continuously connecting the front and rear edges to form the panty portion of the garment.

#### "CLAIM 5

"A combination panty and stocking garment formed from circularly knit fabric comprising

a pair of stockings of seamless knit construction having foot, leg and welt portions,

said foot, leg and welt portions being knit of stretchable yarn, said welt portion being adapted to extend (on the leg from) above the knee to the waist of the wearer,

each of said welt portions having a longitudinal slit cut walewise inter-

mediate the front and rear of the stockings to form front and rear edges extending from the waist to the crotch area of a wearer,

said stockings being oriented to position the longitudinal slits adjacent each other,

and means including a U-shaped seam binding the pair of stockings to each other intermediate a single enlarged welt defining the panty of the garment.

"REISSUE PATENT CLAIM

"A combination panty and stocking formed from circularly knit fabric comprising

a pair of stockings of seamless knit construction having foot, leg and welt portions

said welt portions being knit of stretchable yarn and adapted to extend above the knee to the waist of the wearer,

said welts each having a longitudinal (seam) *slit* intermediate the front and rear of the stocking,

said first and second stockings being oriented to position the longitudinal (seams) *slits* adjacent each other,

and a seam binding the corresponding front and rear edges formed by the longitudinal slits to form a U-shaped seam intermediate a single enlarged welt and defining a panty."

It is obvious from the affidavit of the petitioner, Ernest G. Rice, which affidavit was filed with the application for the reissue patent, No. RE 25,360, that there was concern on the part of the petitioner as to whether the claim in the original patent, No. 2,826,760, protected the owner against the construction employed by the defendant wherein the longitudinal slits were bound or seamed to the crotch piece. In this respect attention is called to the following portions of the Rice affidavit:

"2. An examination of the claim indicates that the limitation of a U-shaped seam to form a single enlarged welt is unduly restrictive and

subjects the claim to considerable ambiguity. * * *

"(2) That he was under the impression that as long as a single U-shaped seam appeared in the claim it is ambiguous in that a single U-shaped seam may be interpreted as *excluding more than one single seam either at the front or rear of the garment"* (Italics added).

It is evident that the intervention of the diamond shaped crotch piece between the longitudinal slits, with the accompanying seams necessary thereto, presents a garment with "more than one single seam at the front and rear of the garment." The plaintiff contends that the language "a seam binding the corresponding front, and rear edges formed by the longitudinal slits to form a U-shaped seam" can be interpreted to require that the seam merely binds the edges at some point, and thus interpreted, prohibits the defendant's construction where the crotch piece limits the seaming of the slit edges to the area between the rear corner of the crotch piece and the waist band and the front corner of the crotch piece and the waist band. To adopt the interpretation of the plaintiff would in effect grant the plaintiff that which was rejected in Claims 2–5, inclusive.

The applicant's claims 2, 3, 4 and 5 were rejected as unpatentable by the Examiner in view of the British Patent to Appleton, Patent No. 15,835; U. S. Patent to Goodman, Patent No. 2,697,-925; and U. S. Patent to Faucette, Patent No. 2,396,166. From the adverse decision of the Examiner, the applicant appealed to the Patent Office Board of Appeals, which Board sustained the decision of the Examiner, and the Board adopted the reasoning of the Examiner as their reasons for rejecting claims 2, 3, 4 and 5. Therefore, it is important to examine the reasons stated by the Examiner for rejecting the claims, among which reasons are the following:

"Applicant argues that in view of the allowance of claim 1, claims 2–5

inclusive, should also be allowed. However, claim 1 calls for 'a seam binding the corresponding front and rear edges formed by the longitudinal slits to form a U-shaped seam.' Claims 2–4 inclusively merely call for 'means connecting the corresponding front and rear edges' which is far broader than the limitation of claim 1. These broad means may include the buttons utilized in the Appleton Patent. Claim 5 as pointed out above merely calls for 'means *including* a U-shaped seam binding the pair of stockings to each other' (emphasis added). Therefore, this claim is also much broader than claim 1 since claim 5 may read on the crotch piece and additional seam associated therewith as found in Appleton and Goodman."

Unquestionably, the Board of Appeals, and prior thereto the Examiner, refused to allow claims 2–5, inclusive, for the reason that the terms "means" and "Means including a U-shaped seam" would read on the crotch piece and additional seams found in Appleton and Goodman.

The exhibits of the Goodman and Appleton patents before the Court reflect an elongated crotch piece seamed along its side edges to the slits appearing in the knitted legs. It is readily apparent that it cannot be accurately said that a *seam* directly connects the two stockings in the defendant's garment, as the crotch piece and surrounding seams form a connecting link between the slit edges.

■ The applicant failed to pursue his remedy of appeal but impliedly accepted the refusal of the Patent Office to allow claims 2–5, inclusive. An applicant for a patent, who is not in accord with the action of the Patent Office in connection with his claim or claims, has a clear right to appeal, and if such remedy is not pursued, the propriety of the rejection of the claim or claims is not a proper subject of inquiry by the district court in a suit for infringement or invalidity, such being the case whether the Patent Office was "right or wrong" in its action.

Power Curbers, Inc. v. E. D. Etnyre & Co., 4 Cir., 298 F.2d 484 (1962); Carter Products, Inc. v. Colgate-Palmolive Co., 164 F.Supp. 503 (D.C.Md.1958).

■ The plaintiff in the prosecution of this case runs head on into the well established rule in this circuit, as well as other circuits, that when claims are rejected and withdrawn during proceedings in the Patent Office, the patentee is estopped to contend that the claim or claims allowed be given an interpretation as broad as the claims denied. It appears that this rule is controlling whether the application is concerned with an original or reissue patent. For this principle, attention is called to Smith v. Florence-Mayo Nuway Co., 4 Cir., 182 F.2d 507, 509 (1950) where it is stated:

"* * * and the patentee may not ask this court to give to the limited claims granted him an interpretation which would make them as broad as the claims denied in the abandoned application for reissue."

Also see Power Curbers, Inc. v. E. D. Etnyre & Co., supra, where the following is stated 298 F.2d at page 494:

"Claims for an invention once abandoned, cancelled or surrendered to meet the examiner's objections may not be reasserted at the whim of the patentee."

The court in Power Curbers, Inc., v. E. D. Etnyre & Co., supra, in support of its position, cited the case of Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132 (1940), rehearing denied, 312 U.S. 714, 61 S.Ct. 727, 85 L.Ed. 1144 (1941) and quoted therefrom as follows:

"But the particular invention to which the patentee has made claim in conformity to the statute is not always to be ascertained from an inspection of the specifications and claims of the patent alone. Where the patentee in the course of his application in the patent office has, by amendment, cancelled or surrendered claims, those which are allowed are to be read in the light of

those abandoned and an abandoned claim cannot be revived and restored to the patent by reading it by construction into the claims which are allowed."

■ It is a rule in patent construction that claims allowed must be interpreted in the light of the claims rejected, and that the claim allowed cannot be so broadly construed as to grant the applicant that which was denied in the rejected claims. Therefore, the plaintiff cannot now validly contend that its claim as allowed be given an interpretation that would have the effect of granting him that contained in rejected claims 2, 3, 4 and 5. The Examiner stated that " 'means including a U-shaped seam' contained in claim 5 is also much broader than claim 1 since claim 5 may read on the crotch piece and additional seam associated therewith as found in Appleton and Goodman." Deducting from this language of the Examiner, which language was adopted by the Board of Appeals, the Examiner and subsequently the Board of Appeals decided that claim 1 (allowed as the single claim in the reissue patent in suit) did not "read on" a crotch piece as found in the Goodman and Appleton patents. This could only mean that the language "a seam binding the corresponding front and rear edges formed by the longitudinal slits to form a U-shaped seam" as recited in the reissue patent claim cannot be interpreted or construed to cover a crotch piece between the longitudinal slit edges, with the consequent configuration of seams, as the Examiner and Board of Appeals pointedly held that such crotch piece and seams would be covered by the language "means including a U-shaped seam" as contained in rejected claim 5.

The exhibits show without question that with the use of the crotch piece more than one seam is present, as it is necessary in the defendant's garment to sew the four sides of the diamond shaped crotch piece to the slits in the two stockings. In fact, no single seam connects the two stocking slits, as the crotch piece intervenes and forms a connection between the slits in the stocking members.

■ The plaintiff by argument and in its brief calls attention to the legal principle that the claims of a patent are always to be read or interpreted in the light of the specifications. Schriber-Schroth Co. v. Cleveland Trust Co., supra; Scott & Williams, Inc. v. Whisnant, 4 Cir., 126 F.2d 19 (1942).

See Demco, Inc. v. Doughnut Machine Corp., 4 Cir., 62 F.2d 23, 25 (1932) where the court stated:

"It is elementary that the language of the claims is to be construed in the light of the specification[s] and drawings."

An examination of the language of the patent in suit reveals that, prior to the claim and beginning at line 39, there appears the following:

"The present invention contemplates a combination garment in which a pair of circular knit seamless stockings, preferably of nylon, having foot, leg and individual welt portions is integrally combined with an upper enlarged tubular or welt section that is knit as a continuation of the stocking welts to form a pair of underpants having a crotch portion there between."

Also, beginning at line 62, the following:

"Obviously, a reinforced panel may be sewn to the crotch area, if necessary."

■ It appears clear that the file history is to be reviewed in originally construing and interpreting a claim. In Schriber-Schroth Co. v. Cleveland Trust Co., supra, the court stated:

"It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with claims that have been cancelled or rejected and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent."

528

To give the language appearing at lines 39 and 62 of the patent an interpretation to cover the accused garment, in the light of the file history, the Court reiterates would in effect grant the plaintiff that which was rejected by the denial of claims 2, 3, 4 and 5. It is significant that the language quoted from the patent as beginning at line 39 refers to a crotch "portion" rather than crotch "piece." The more reasonable interpretation of this language is that it is descriptive of the areas of the garment rather than of a component individual piece. This construction becomes more plausible when line 62, herein quoted, is considered as there it speaks of a "reinformed panel \* \* \* sewn to the crotch area."

The plaintiff, in its answer to interrogatories filed by the defendant on April 24, 1964, admits that it knows of no other construction of the defendant's which infringes other than defendant's Exhibit 1 served with the interrogatories, which Exhibit 1 consists of a garment with a crotch piece. Interrogatories submitted and adverse examinations of officials of the defendant reveal that the defendant in 1960, as an experiment, made several dozen combination panty and stocking garments without the crotch piece between the stocking portions, but did not market the same. The controversy before the Court is over the crotch piece garment, and the experimental garment without the crotch piece is not a real issue between the parties, as the record abundantly confirms.

█ The plaintiff urges that file wrapper estoppel cannot be applied unless resort is had to the doctrine of equivalents to establish infringement. Precedent does not support the plaintiff's position in this respect. Smith v. Florence-Mayo Nuway Co., supra; Power Curbers, Inc. v. E. D. Etnyre and Co., supra; Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 181 F.2d 550 (1950).

Defendant's motion for Summary Judgment is granted and each party shall bear its own costs. Counsel are requested to submit an order accordingly.