Rebecca **WILSON** et al., Plaintiffs,

v.

James W. **WEBSTER**, etc., et al., Defendants.

No. 70–1328.

United States District Court, C. D. California.

July 13, 1970.

John M. Sink, Santa Barbara, Cal., for plaintiffs.

George P. Kading, County Counsel, Michael R. Dougherty, Deputy County Counsel, County of Santa Barbara, Santa Barbara, Cal., for defendants.

## MEMORANDUM OPINION

CURTIS, District Judge.

This is a Civil Rights action brought by the plaintiffs on their own behalf and on behalf of all other residents of Isla Vista, a community near the city of Santa Barbara in Santa Barbara County. They seek to enjoin the sheriff, the district attorney, the county administrative officer and the members of the board of supervisors of Santa Barbara County from carrying on what plaintiffs call "a campaign of terror and brutality" against the plaintiffs and other residents of Isla Vista.

This action is an aftermath of a violent confrontation between groups of persons composed largely of students from the University of California at Santa Barbara and law enforcement officers, which resulted in personal injury and property damage of considerable proportions. It would serve no purpose here to recount, step by step, the origin and the progress of the strife. This has been thoroughly covered by the news media. Suffice it to say that in retro-

spect it was, indeed, one of the most devastating and serious conflicts of its kind within recent months.

Plaintiffs allege that from about January 1, 1970, to the time of the filing of the complaint, a small minority of the residents of Isla Vista, which has a population of approximately 13,000, participated in public demonstrations and meetings in the vicinity of the Isla Vista Shopping Center. Some of the participants have, on some occasions, participated in acts of violence, but it is alleged that the officers instead of responding to these incidents in a lawful and usual manner, acted pursuant to a conspiracy, entered into by all defendants and "embarked upon a campaign of inflicting terror and brutality on every person in Isla Vista, in disregard of personal human rights protected by the federal and state constitutions, for the purpose of reducing the entire population to a state of terrified compliance", thus prohibiting expression of ideas except those acceptable and pleasing to the officers. The "pattern of harassment", plaintiffs allege, included the enactment of an enabling ordinance permitting a "sporadic and rapidly changing series of curfews, applicable only to the community of Isla Vista", imposed in many instances by administrative order and with inadequate advance notice. These curfews, it is alleged, have apparently been intended for, and in fact served as, a cover for acts of violence against the plaintiffs and other residents of Isla Vista for mass arrests of persons, without cause. Plaintiffs then allege a great variety and a large number of acts committed by the police, which, they say, were committed with the knowledge, acquiescence, and in some instances with the actual encouragement of the defendants. We need not recount them all, but the following are perhaps typical examples of the police action of which plaintiffs complain: the smashing of doors and entering private dwellings without warrants or lawful reasons, beating and arresting occupants without provocation or cause, the arrest of persons after the officers have enticed them into the restricted area in violation of the curfew, subjecting such persons arrested to indignities and abuses, the use of wire hand restraints and excessively tight handcuffs, and the abuse of both men and women while in jail.

The plaintiffs have filed some 38 affidavits in support of these allegations. The defendants have filed 31 affidavits in opposition, most of which are statements of police officers, which in some instances categorically deny that certain acts occurred, but for the most part these affidavits allege facts, which, if true, would seem to justify the police action complained of.

Before entering this contentious area where emotions and tempers run high and where a delicate balancing of constitutional rights is required, some orientation seems appropriate lest the import and the scope of this ruling be misconstrued.

The rights of free speech and free assembly are privileges dear to the hearts of the American people and the courts are ever alert to assure to all persons their free and full enjoyment. To the youth of today these newly discovered privileges have entrancing possibilities. It is a concerned generation, well educated, intelligent and articulate, and its members have a message which they are determined to tell. To speak their piece as loudly and as persistently and as dramatically as the *law allows* is their American heritage, which the courts of the land stand as ready to protect against all unwarranted invasion.

Unfortunately, youth's impatience and impetuousness make it easy prey for the nihilist, the terrorist and the revolutionist, who insist that violence is a necessary persuasive device.

But violence, whether it be committed by demonstrators or by the police acting in excess of their authority, is intolerable. It is incompatible with the goals of a civilized society which seeks to provide a peaceful, harmonious and cooperative environment wherein a man

may get on with the fulfillment of life's purpose. It is the first function of government to create and preserve such an environment. To this end, and under the police power provisions of the Constitution, states, counties and municipalities may make reasonable laws and ordinances, even though they may limit to some degree the right of free speech and free assembly, where such laws and ordinances are necessary to preserve the peace and to protect lives and property. These laws and ordinances, in turn, may be enforced by police who, in order to do so, may use all force reasonably necessary to accomplish these ends. But they may not use excessive force.

█ It is, of course, often difficult to determine when force used in a particular set of circumstances is reasonable, and the suspect and the police usually disagree. Furthermore, that which may appear necessary at the height of a confrontation, may in cooler moments seem to have been unnecessary. But the law protects an officer from the consequences of judgments made by him in good faith and without malice when, in the light of his knowledge and all of the circumstances, his conduct appears to have been reasonable.

From plaintiffs' affidavits it appears that law enforcement officers engaged in a series of acts unnecessarily harsh and brutal. However, it appears from the defendants' affidavits, if the allegations therein be true, that they did nothing more than that which was reasonably necessary and justified.

Considering as we are, an application for preliminary injunction, and being faced with conflicting affidavits, the court is in no position to determine whether the police action of which the plaintiffs complain was proper or not. The parties must await a full trial, when the testimony of witnesses can be taken as to each incident, before these issues can be resolved. It is unlikely, however, as we shall point out later, that such can occur in this case.

The plaintiffs here are only seeking injunctive relief against future incidents. They have other remedies. They could have sued the police individually and, perhaps, the political subdivisions under whose authority the police acted, seeking such damages as would compensate them for any injuries received. They could prefer criminal charges against the officers, and if the district attorney should fail to cooperate, they could seek the assistance of the grand jury or the attorney general of the State.

In applying to this court for an injunction, the plaintiffs in the prayer of their complaint ask that the officers be enjoined:

"a. From breaking into any house, apartment or residence in Isla Vista, without warrant, in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States;

"b. From making illegal arrests under color of law;

"c. From assaulting, beating, terrorizing, intimidating and inflicting summary and cruel punishment on members of plaintiffs' class, whether or not arrested, including denial of medical attention, phone calls, bail and legal assistance;

"d. From using plastic and wire hand ties on human beings;

"e. From requiring prisoners to furnish excessive bail;

"f. From falsely imprisoning any member of this class or requiring him to remain in any courtroom, jail, or other form of custody under intimidation or threats or fear of death or otherwise, for any alleged 'lack of authority' on the part of the individual deputy sheriffs or on any other pretext, after such person has posted bail in the amount legally required to obtain his release, or when such person has had all criminal charges against him dismissed in open court."

█ Although this court has jurisdiction here to issue an injunction when

appropriate, there are many situations in which the court should refrain from the use of this power. The enjoining of state law enforcement officers is a serious and extreme remedy and should be used only with great caution and where the reasons and necessities therefor are clearly established. Furthermore, it should not be issued merely to allay fear or apprehension, but only where there is an imminent and threatened injury.

In the present case, the confrontation is over, at least for the moment. School is out, the student population is greatly diminished, there is no curfew in effect, none of the plaintiffs or members of their class are presently defendants in pending prosecutions, none are in jail, there is no imminent threat and no present need for injunctive relief.

■ A more serious issue, however, does appear in that the plaintiffs are seeking a permanent injunction of a kind and nature which this court cannot grant. For the most part, the police action complained of consists of conduct which is not illegal per se. Breaking into a private dwelling without a warrant may be justifiable and legal under certain circumstances, although illegal and improper under others. Beating a person over the head with a club, although brutal and excessive under some circumstances, may in others be the only means by which an officer may subdue a recalcitrant offender. It would be improper for this court to enjoin all of such acts as this would amount to an unjustified interference with law enforcement officers of the state. Plaintiffs recognize this, and so they seek to enjoin only those acts when they are done in an unlawful manner.

■ But such an injunction would be unenforceable as it would lack the required specificity required by Rule 65(d) of the Federal Rules of Civil Procedure.[1] An injunction must be so clear and certain in its terms that a defendant may readily know what he is restrained from doing. United States v. Vitasafe Corporation, 345 F.2d 864 (3rd Cir. 1965). There it was held that an injunction prohibiting the distribution of literature containing certain specified statements and misrepresentations "or which is otherwise false or misleading," lacked the required specificity. This court holds, therefore, that the injunction which the plaintiffs seek would be unenforceable because of excessive vagueness.

■ Plaintiffs further seek an injunction requiring the cancellation of all arrest records of members of the class who are acquitted or dismissed. These are state records. There is no contention that they are incorrect and there are no facts alleged which would justify the court in taking such action.

For these reasons, it is apparent that the plaintiffs would not be entitled to the relief which they seek even after an ultimate trial on the issues presented.

Accordingly, the application for temporary restraining order and the preliminary injunction is denied and the defendants' motion to dismiss is granted.

Attorneys for defendants shall prepare findings of fact, conclusions of law and judgment.

---

1. *Rule 65. Injunctions*
 *(d) Form and Scope of Injunction or Restraining Order.* Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; * * *.