John REESE, Plaintiff,

v.

Jacob G. KASSAB, Secretary of the Department of Transportation of Pennsylvania and Julius A. Trombetta, Director of the Bureau of Traffic Safety of Pennsylvania, Defendants.

Civ. A. No. 71–551.

United States District Court,
W. D. Pennsylvania.

Oct. 26, 1971.

As Amended Nov. 4, 1971.

Rosenberg, J., filed concurring opinion.

Jerome Hahn, Washington, Pa., for plaintiff.

Anthony J. Maiorana, Asst. Atty. Gen., Dept. of Transportation, for defendants.

Before STALEY, Senior Circuit Judge, and WEIS and ROSENBERG, District Judges.

## OPINION

WEIS, District Judge.

The Pennsylvania "Point System" is under attack in this case, the plaintiff contending that the procedure providing for suspension of a driver's license without an administrative hearing violates the due process requirements delineated by the United States Supreme Court in the recent case of Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

The statute enacted by the Pennsylvania legislature [1] provides a system of assessing "points" by the Secretary of the Department of Transportation upon receipt of notification of convictions of certain specified violations of the Motor Vehicle Code. Notice is given to the driver of the imposition of the points on each occasion and when a total of 11 points is accumulated, the Secretary is directed to suspend the operator's license for a period of 60 days. There are other provisions of the Act providing for point credits for attending driver improvement school, and also for each year of a conviction-free driving record.

No administrative hearing is provided either upon each assessment of points or before suspension, but after the penalty has been imposed an appeal may be taken to the Court of Common Pleas, in the county wherein the licensee resides.[2]

The Stipulation of Facts shows that the plaintiff John Reese is a truck driver whose livelihood depends upon his ability to operate a motor vehicle. His record with the Department of Transportation reveals the following:

1.  An arrest on September 26, 1967 for speeding; fine and costs were paid without a hearing and 6 points were assigned by the Secretary on October 21, 1967.

2.  Reese attended driver improvement school in January of 1968 and received a credit of 1 point.

3.  On June 24, 1968 the plaintiff paid a fine and costs for violating Section 1028(a) of the Motor Vehicle

1.  75 P.S. § 619.1.

2.  75 P.S. § 620. An appeal from the Court of Common Pleas originally was taken to the Superior Court, but was amended to the Commonwealth Court. Act of July 31, 1970, P.L. ——, No. 223, Art. IV, § 402(3), 17 P.S. § 211.402(3). The Commonwealth Court, as well as the Common Pleas Court, has the discretionary power of supersedeas.

Code dealing with traffic signals. Five more points were assigned.

4. No convictions having been entered from June 24, 1968 to June 2, 1969, the plaintiff received a credit of 2 points.

5. On July 30, 1969 Reese was charged with speeding, paid the fine and costs without a hearing. On receipt of notification of this proceeding, the Secretary assigned 3 points.

Since the plaintiff at this point had a total of 11 points, his license was suspended by the Secretary for a period of 60 days. Thereafter, the plaintiff took an appeal to the Court of Common Pleas of Washington County, Pennsylvania, contending that he was not guilty of the violations for which points had been assessed and that there was a fatal variance between the information and conviction for violation of Section 1028(a) of the Motor Vehicle Code which was alleged to have occurred on June 24, 1968 (item 3 above).

The Court of Common Pleas granted the Commonwealth's motion to quash the appeal and on a motion for rehearing, the previous ruling was affirmed, the court relying upon the case of Commonwealth v. Virnelson, 212 Pa.Super. 359, 243 A.2d 464 (1968) which held that there could be no review of the facts behind the convictions giving rise to the assessment of points and that the only matter which might be shown was improper calculation of the points. Under Pennsylvania law payment of fine and costs is equivalent to a plea of guilty and in the context of this case would be an admission of a conviction. Commonwealth v. Virnelson, supra.

Reese perfected an appeal to the Superior Court of Pennsylvania which affirmed the action of the Common Pleas Court. The Supreme Court of Pennsylvania refused to grant allocatur.

Alleging that the Point System Act was unconstitutional, the plaintiff then filed this suit for an injunction to prohibit the Secretary from suspending his license. Since the requisite jurisdictional grounds exist, this three-judge statutory court was convened.

■ There can be no quarrel with the Commonwealth's position that in order to regulate the use of its highways, the state does have power to enact the Point System Plan into law and that it may use infractions of the Vehicle Code as a basis for license suspension. We may say further that the legislation is an intelligent and commendable effort to diminish the carnage on our highways by focusing attention on the most common cause of accidents, the careless and code-violating driver. However, it is not enough that the substantive provisions of a statute pass constitutional muster because it is also necessary that the methods of administration meet appropriate standards of due process.

■ Bell v. Burson, supra, makes it clear that even if denominated a privilege, as the Pennsylvania Court did in Commonwealth v. Funk, 323 Pa. 390, 186 A. 65 (1936), nevertheless an operator's license is not to be taken away by state action which fails to comply with procedures required by the Fourteenth Amendment.

■ The Commonwealth in its brief concedes, and our independent examination confirms, that the "Point System" Act makes no provision for departmental administrative hearing at any time before suspension. Section 618(h) of the Vehicle Code provides that after notice of suspension, any person may request a departmental hearing but it is not the practice to notify the licensee of the availability of this opportunity.[3] See In Re Hamsher Motor Vehicle Operator License Case, 196 Pa.Super. 336, 175 A.2d 303 (1961). Similarly, judicial review

---

3. "Whenever the secretary suspends the operator's license * * * of any person, the secretary shall immediately notify such person and afford him an opportunity of a hearing before said secretary or his representative, provided such hearing has not already been held * * *" 75 P.S. § 618(h).

under Section 620 of the Code is provided only after suspension.

We find that this falls short of what the Constitution requires. As was said in the *Bell* case:

" * * * it is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." 402 U.S., at 542, 91 S.Ct., at 1591.

Here the state furnished neither notice nor opportunity for Reese to be heard either at an administrative hearing or de novo before a court before the termination.

The Commonwealth contends that because the action of suspension by the Secretary is not discretionary under the Act, an administrative hearing is not required.

■ We point out, however, that even if the convictions cannot be contested, there still remain the possibilities, among others, that the convictions were those of another person with the same name; that the fines and costs were paid on an information at variance with that for which the minor judiciary entered a conviction as plaintiff contends occurred in this case; that the points were improperly calculated; that credits were wrongfully withheld; or that there were errors on the report of conviction form. In none of these instances is there a provision for a hearing before suspension even though notice of the assessment of points is given.[4] Notice without opportunity to rectify error obviously is not sufficient.

As an indication that an administrative hearing before suspension would not be a novel or undue burden on the Com-

monwealth—even if that were material— we point out that 75 P.S. § 618(b) requires that a hearing be held *before* suspension in certain enumerated situations, some of which involve mandatory revocation in the event of conviction in the criminal courts.

Furthermore, the state's Motor Vehicle Safety Responsibility Act[5] utilizes license suspension as a sanction and, while the Commonwealth contends that such action by the Secretary is discretionary, in practice it has been utilized as a matter of course when there has been a failure to comply with the statute. In Ortiz v. DePuy, 444 F.2d 429 (1971) the Court of Appeals of this Circuit was advised that Pennsylvania was revising its administrative procedures by requiring a prior adversary hearing to comply with the holding in Bell v. Burson, supra.

There is nothing in Sections 618 or 619 which would prevent the Department of Transportation from promulgating appropriate regulations to provide for a prior administrative hearing in Point System cases, just as is being done in Financial Responsibility matters.

In short, we hold that before an operator's license can be suspended by the Secretary under the terms of the Pennsylvania Point System, there must be notice and opportunity for hearing before the action becomes effective.

We share the concern for necessary highway safety programs discussed in the concurring opinion and emphasize that the ruling in this case will not impair the effective operation of the Point System in any material fashion.

Plaintiff also contends that the statute involves an unlawful delegation of power by the legislature to the Secretary and that the failure of the Commonwealth to produce certain records in the Court of Common Pleas constituted lack of due process. In view of our disposition of the case, we do not feel it necessary to

4. In Wilson Motor Vehicle Operators Case, 218 Pa.Super. 309, 280 A.2d 820 (1971) an appeal from a specific assessment of points was sustained by a Court of Com-

mon Pleas but reversed by the Superior Court on the basis that there was no provision in the Act for such a procedure.

5. 75 P.S. § 1404 et seq.

pass upon these points particularly since they are of doubtful validity.

An appropriate injunction will be issued.

ROSENBERG, District Judge (concurring).

The petitioner in the instant case alleges that the suspension of his operator's license prior to an opportunity to demonstrate that the Secretary's records are in error, constitutes a violation of his rights to due process, guaranteed by the Fourteenth Amendment.

"The fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). See also, Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); the concurring opinion of Mr. Justice Frankfurter in Joint Anti-Fascist Refuge Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L. Ed. 817 (1951); Davis v. Weir, 328 F. Supp. 317 (N.D.Ga.1971); Ackies v. Purdy, 322 F.Supp. 38 (S.D.Fla.1970). However, it must be remembered that "Due process is not a fixed, inflexible procedure which must be accorded in every situation. It varies with the circumstances involved." Baker v. Downey City Board of Education, 307 F.Supp. 517, 522 (D.C.Calif.1969). And one of the primary instances in which due process may be limited is in the valid exercise of reasonable police powers. Wilson v. Webster, 315 F.Supp. 1104 (D.C.Calif. 1970).

"The power of the State to regulate the use of its highways is broad and pervasive." Bibb v. Navajo Freight Lines, 359 U.S. 520, 523, 79 S.Ct. 962, 964, 3 L.Ed.2d 1003 (1959). And the state may impose reasonable restrictions on such use, in the interests of public safety. Walkinshaw v. State of Pennsylvania, 119 F.Supp. 722 (W.D.Pa.1954). To further this end, the legislature of Pennsylvania enacted § 619.1 of the Motor Vehicle Code, the "Point system for driver education, testing and suspension".

Section 619.1 provides that the Secretary maintain records of convictions of every person licensed by the Commonwealth, and that upon receipt of information concerning conviction, he assign a prescribed number of points to that individual's record. In addition, it is provided that when an individual accumulates 11 points, the Secretary must suspend such person's operator's license or learner's permit. No discretionary determination is sanctioned, but rather a mandatory act on the part of the Secretary. However, an individual always has a right to appeal any conviction,[1] and upon successful appeal to have the points eliminated. Furthermore, every driver in Pennsylvania is held to have knowledge of the point system, and recognize that conviction will result in the assessment of a fine and assignment of points to his record.[2]

Therefore, the time to appeal, and the allowance of a day in court with full procedural due process is provided in the statutory procedure for appealing from convictions by a magistrate. This day in court is what is contemplated by due process. Having failed to take advantage of this constitutional right, it does

---

1. 75 P.S. § 1215.

2. The record in the present case discloses as follows:

1. That on or about October 21, 1967, petitioner was convicted for speeding at the rate of 76 miles per hour in a 65 mile per hour zone in violation of Section 1002(b) (7) of the Code.

2. That petitioner attended Driver Improvement School in January 1968 for which he received a credit of one point.

3. That on or about June 24, 1968 petitioner was convicted of disobeying a traffic signal, and fined $5.00 plus costs, and assigned 5 points.

4. That there then ensued a period of one year in which no convictions occurred, and for which petitioner received a two point credit.

5. That on or about August 28, 1969 petitioner was convicted of speeding at a rate of 55 miles per hour in a forty-five miles per hour zone, in violation of Section 1002(c) of the Code. A fine of $10.-00 plus costs was paid and 3 points were assigned.

not appear warranted to accord an individual the opportunity to oppose the summary suspension of his license when he at no time opposed those matters which cumulatively created the situation which eventuated in suspension. "It is sufficient for the purpose of due process that the statute or statutes are drawn in such a manner as to notify the actor of the prohibited conduct." United States ex rel. Shell Oil Co. v. Barco Corporation, 430 F.2d 998, 1001, C.A.8, 1970.

Closely analogous to the present situation is that of individuals sentenced to life imprisonment as habitual offenders. In Whiteley v. State of Wyoming, 293 F. Supp. 381 (D.C.Wyo.1968), affirmed 416 F.2d 36, C.A.10, 1969, reversed 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), the District Court held that "Upon proof that petitioner had been convicted of a felony three times previous to the conviction about which he now complains, the trial court properly enhanced petitioner's punishment by imprisonment in the state penitentiary for not less than life," in accordance with the Wyoming statute on habitual offenders, 293 F.Supp. at 386. The Court of Appeals for the Tenth Circuit affirmed without reference to the state's habitual offender statute, and the Supreme Court in reversing likewise did not refer to that statute. Both appellate courts concerned themselves with the issue of probable cause for arrest.

> "Even though an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual criminal is 'essentially independent' of the determination of guilt on the underlying substantive offense. * * * Thus, although the habitual criminal issue may be combined with the trial of the felony charge, 'it is a distinct issue, and it may appropriately be the subject of separate determination. * * *
>
> "Nevertheless, a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense. * * *" Oyler v. Boles, 368 U.S. 448, 452, 82 S.Ct. 501, 503, 504, 7 L.Ed.2d 446 (1962). Cited in United States ex rel. Swingle v. Rundle, 318 F.2d 64, C.A.3, 1963.

However, the relevant Pennsylvania statute [3] vests the trial judge with discretionary authority to impose a life sentence on an habitual criminal. Contrasted with this, is the mandatory imposition of license suspension under the Code. There is no discretionary provision in the Code which would enable an individual to allege that a different or lesser penalty might have been imposed, as in the habitual criminal act.

Accordingly, the analogy is useful for a limited purpose only, because under the habitual criminal statutes, the penal provisions are discretionary, while in the motor vehicle license suspension cases, the suspension is mandatory. Thus an individual on trial as a fourth offender under the Pennsylvania habitual criminal statutes cannot be certain that the court will exercise its discretion, and should be permitted to come forth and show why a life sentence should not be imposed, whereas, an individual who acquires 11 points under the Code is held to have had prior knowledge that conviction of the offenses would result in mandatory suspension of his operator's license. The final motor vehicle conviction contains the inherent penalty of license suspension, and an individual should not be permitted to collaterally attack prior convictions when he failed to do so directly, and in fact acquiesced to the convictions.

Likewise, it has been held that where a criminal defendant attempts to enter a guilty plea, he must be aware of his possible treatment as an habitual offender or one ineligible for parole. See Bye v.

3. 18 P.S. § 5108.

United States, 435 F.2d 177, C.A.2, 1970,[4] and cases cited therein. However, even the analogy of lack of information on which to make an intelligent plea, which the Court reviewed in *Bye*, falls in view of the fact that the ineligibility for parole was an exception to the general provisions of law, and that an individual may rely on the generally held belief that he will be eligible for parole after serving one-third of his sentence.[5]

Those licensed by a state to operate motor vehicles on its highways are charged with the knowledge that a violation of the Code will result in liability for the payment of a fine and the assignment of a specified number of points to that individual's record, and that on the accumulation of 11 points automatic license suspension will result. Accordingly, it seems to me that the licensed public is charged with knowledge of the provisions of the Pennsylvania Motor Vehicle Code; that all motor vehicle operator licensees must abide by the rules of the road and that upon failure to do so to stand liable and submit to the penalty of a fine and points, and such suspension and revocation as are set forth in the Act.

I find it difficult to separate the penalty into two separate parts so as to indicate that the payment of a fine is one thing, and the imposition of points is another. In reality the paying of the fine and the imposition of the points are one and the same, since by legislative mandate the latter accompany the former. The only difference is that in the case of the payment of the fine, it is the committing magistrate who imposes the penalty, and in the case of the points, it is the Secretary acting under the provisions of the Code.

Under Pennsylvania law, an individual who is convicted of a motor vehicle offense and has a fine imposed upon him may still appeal the conviction to the proper court where he may test the right or wrong of the charge made before the magistrate. If he prevails on appeal, both the fine and any assigned point penalties must fall; if he does not prevail on the merits, he must pay the fine and point encumbrances, but that is not to say that the point penalty then is to be considered separately. He knows of the conviction and he has had notice and opportunity to defeat it. So when an individual has several convictions and the assigned points add up to 11, he has a continuing notice and the opportunity to take appeals on the merits. Under these circumstances, I do not see that there is a failure of due process when he, himself, should know that when 11 points are accumulated it is mandatory that the Secretary suspend his license.

In the present situation, the repeated nature of the offenses, and the non-discretionary duty of the Secretary compel the conclusion that in all probability the petitioner is the type individual which the Commonwealth sought to exclude from its highways in the interests of public safety. In almost every case of this sort, a hearing prior to the suspension would serve no valid purpose other than putting the Commonwealth to the added burden of providing a hearing which would disclose that the assignment of 11 points to the individual's driving record was properly made. However, as the majority indicates, there does exist the extremely remote possibility that compounded errors could result in the suspension of the license of an innocent individual. Under these circumstances, which I feel are highly improbable, a miscarriage of justice would result in an individual being deprived of his operator's license without due process of law.

Prior to the addition of § 619.1 when the 1959 codification of § 618(b) (2) was effective, the Secretary was vested

---

4. In Bye v. United States, *supra*, petitioner claimed that he had not been informed that as a consequence of pleading guilty to a narcotics offense he would be ineligible for parole. The Court held that it could not be said that the petitioner voluntarily entered his plea when he was not informed that he would be ineligible for parole.

5. See 18 U.S.C. § 4202.

with discretionary power to determine when an operator-licensee should be cited for a license suspension hearing. Thereafter an appeal from such discretionary suspension by the Secretary was to the court of common pleas or the County Court of Allegheny County, which courts had broad power to reverse the suspension for various reasons including operational hardship.

Section 619.1, as enacted in 1966 removed this discretionary power from the Secretary and made it mandatory for him to suspend a license when eleven points were charged against the operator for convictions of motor vehicle violations. The legislature then gave the licensee the right of appeal under § 620 to the court of common pleas of the county in which the operator resides or the County Court of Allegheny County to determine from the records of convictions before the magistrates and the records of the court whether the suspension was given in accordance with the mandate of § 619.1. At such hearing the operator is permitted to show only that he was not convicted or that the records or computations of the Secretary are incorrect. Virnelson Motor Vehicle Operator License Case, 212 Pa.Super. 359, 243 A.2d 464 (1968). The court can inquire no further than this and it may not retry the merits of the convictions or upset the penalties provided for such violations.

As Judge Jacobs said in *Virnelson* at page 368, 243 A.2d at page 469, "The discretion in these cases has been exercised by the legislature. The merit of suspension is no longer a matter for determination by either the secretary or the courts."

Section 620 gives one against whom the suspension has been directed thirty days to take an appeal to the appropriate court to test the correctness of the suspension. Under ordinary circumstances this should not take away from the due process requirement of the law. However, the majority is of the opinion that the right to show the incorrectness of such a suspension should occur prior to the suspension being made by the Secretary.

While I yield to the thinking of the majority that the innocent individual under these remote conditions should be provided with notice and an opportunity to be heard prior to suspending that individual operator's license, I would emphasize the fact that I am of the firm opinion that the point system is, if not the best, at least a necessary procedure for the purpose of eliminating the offending licensee from the highways both for his own protection as well as for the protection of the general public. For no one will doubt that if ever our highways needed law enforcement for the preservation of the public safety, it is today. We all readily admit that there are too many users of the highways who do need to be supervised and apprehended. And where the law is plain enough we ought not to accept superfluous technical excuses that will help to defeat the safety protection on which the public depends.

It has been held that an operator's license represents a right or privilege which is " * * * not to be taken away without that procedural due process required by the Fourteenth Amendment." Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). The latter case, upon which the majority relies concerns itself with the requirements of due process as it relates to financial responsibility, and consequently Bell does not guide us factually here. But we should not lose sight of the fact that licensing is also a right of the public for protection in the use of the highway. If it were not so, why should there be any licensing at all? Why should not every person who desires to drive an automobile or another vehicle on the highway be permitted to do so without a license? The very fact that an individual is required to have a license also carries with it certain responsibilities, and when such an operator-licensee violates those responsibilities, then the State should have the right and the duty to avail itself of simple procedures for the purpose of enforc-

ing its rules for safety on the highways. I agree that there is no preliminary provision for matters of error in the computation of points or of mistaken identity of an individual in a suspension case, and I believe that there should not be an after-hearing on any errors that may have been committed in the office of a magistrate or even in a court. I believe that the simple record of the magistrate or the court indicating that a fine had been paid upon a particular charge and that no successful appeal was prosecuted should be conclusive. But since there is no provision in the law, or any rules which allow for correction of errors prior to suspension, I must agree that a procedure is lacking to assure the right of a charged person to present limited factual matters, as to the plaintiff here, matters such as identity and point accumulation accuracy. As the Supreme Court stated in United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), a governmental regulation " * * * is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest * * *." See also, Martin v. Davison, 322 F.Supp. 318 (W.D.Pa.1971). The reasonableness of any regulation is to be judged by the context in which it is applied. Gfell v. Rickelman, 441 F.2d 444, C.A.6, 1971. And " * * * it is fundamental that except in emergency situations * * * due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." (Emphasis supplied) Bell v. Burson, *supra*, 402 U.S. at page 542, 91 S.Ct. at page 1591.

Thus, while I firmly believe that § 619.1 of the Pennsylvania Motor Vehicle Code is a valid exercise of police power, I am bound to support the ultimate conclusion reached by the majority only on the remote possibility that a summary suspension might inadvertently deprive an innocent person of his operator's license without due process of law. For the limited purpose of inquiring into the propriety of the Secretary's record, and not for the purpose of authorizing a review of each of the constituent cases or their respective penalties whether fines or points, or both, I join in the result reached by the majority.