**Rust License**

*Michael J. Wherry,* for appellant.

*John J. Kennedy,* Assistant District Attorney, for Secretary of Revenue.

STRANAHAN, P. J., February 28, 1973.—

## FINDINGS OF FACT

1. Defendant Robert J. Rust resides at R.D. No. 2, Grove City, Mercer County, Pa. He was born December 1, 1923, and for many years prior to this action, has been duly licensed by the Commonwealth to operate a motor vehicle.

2. On June 27, 1969, as a result of a summary conviction for a speeding violation in contravention of 75 PS §1002(c) of The Vehicle Code of April 29, 1959, P. L. 58, as amended, the secretary assigned six points to Rust's driving record and imposed a mandatory 15 days' suspension of his operator's license. Rust had been convicted of speeding 62 miles per hour in a 45 mile per hour speed zone.

3. Thereafter, upon receipt of certification that Rust had satisfactorily attended and completed the requirements of driver improvement school, the Secretary of Revenue removed one point from Rust's record in accordance with 75 PS §619.1(f).

4. Thereafter, the secretary removed two additional

points from Rust's driving record as mandated by 75 PS §619.1(j) and (m).

5. On April 6, 1971, the secretary assigned three additional points to Rust's record as mandated by 75 PS §619.1(b) upon receipt of notification that Rust had been summarily convicted of passing in a no-passing zone, a violation of 75 PS §1008(e).

6. On March 23, 1972, the secretary assigned six additional points to Rust's driving record in accordance with 75 PS §619.1(b), upon receipt of notification that Rust had been summarily convicted of speeding in violation of 75 PS §1002(c). As this brought the total point accumulation on Rust's record to 12 points, on April 27, 1972, Rust was informed by a "Notice of Withdrawal of Motor Vehicle Privileges" that under 75 PS §619.1(i) and (k) he was receiving a mandatory 60-day suspension of his operator's license because of a total point accumulation of 11 points or more. The effective date of suspension was to be June 1, 1972. Rust was directed to return any current operator's license then in his possession.

7. Defendant Rust then notified the secretary that he wished a presuspension departmental hearing prior to the effective date of his license suspension. This request for a departmental hearing was granted and Rust's operating privileges were restored pending the outcome of the presuspension departmental hearing.

8. On August 10, 1972, at 10 a.m., a departmental hearing on the correctness of the secretary's record of the points assigned to Rust was held before Edward Baker, Hearing Examiner, at the Mercer County Courthouse, Mercer, Pa.

9. Following this departmental hearing, Rust was notified by the secretary that, because of an accumulation of 12 points on his driving record, his operator's license was to receive a mandatory 60-day suspension

as prescribed in 75 PS §619.1(i) and (k). The suspension was to be effective November 17, 1972.

10. On October 25, 1972, Rust filed a petition for appeal from the order of the Bureau of Traffic Safety suspending petitioner's operator's license in the Court of Common Pleas of Mercer County. The petition asked the court to grant petitioner a hearing de novo on the issue of whether petitioner was subject. to license suspension and on such other matters as the court should deem proper to such a hearing de novo. The court entered a preliminary order granting the petition and ordered a hearing de novo for January 11, 1973. The court further directed that Rust's appeal should act as a supersedeas of the license suspension order.

11. With respect to Rust's first license suspension of 15 days arising out of his conviction for speeding on June 27, 1969, Rust received no opportunity for a departmental hearing prior to the effective date of the license suspension.

## DISCUSSION

We understand Rust to be contending on this appeal that his 60-day license suspension is unlawful because he was never afforded an opportunity for a departmental hearing on the correctness and propriety of the secretary's record of his point total after his summary convictions and the payment of fines and costs of June 27, 1969, and April 6, 1971. Apparently, Rust is contending that he has the right not just to a departmental hearing prior to a license suspension after the secretary determines that he has accumulated 11 points or more, but also that he has the right to have departmental hearing on the correctness of the secretary's assessment of points immediately after each summary conviction, whether or not the points as-

signed for the conviction mandated, without more, a license suspension. After the June 27, 1969, summary conviction for speeding, Rust's operator's license was suspended for 15 days as mandated by 75 PS §619.-1(b), but that suspension period has long past been served and the fact that Rust was afforded no opportunity for a hearing prior to that mandatory 15-day suspension would appear to be moot. Rust was assigned six points for that conviction, but, obviously, there was no 60-day suspension mandated for that since Rust had not accumulated 11 or more points. After the April 6, 1971, conviction of illegal passing, Rust had three more points assigned to his record, but because of removals itemized above, this brought his total point accumulation to only six; once again there was no suspension mandated for that number of total points under any provision of The Vehicle Code. Rust's contention would compel the court to hold that an operator has a right to a departmental hearing on the secretary's compilation of assigned points after each such assignment of points for a summary conviction of a traffic offense, whether or not any license suspension was mandated by The Vehicle Code *at that point* for the operator's accumulation of points.

The Vehicle Code provides that the secretary is required to give a hearing before the secretary can require any operator to undergo a special examination or to attend a driver improvement school or clinic because of that operator's fault in causing an accident, such hearing being for the purpose of determining whether such operator was at fault or partly at fault in causing a motor vehicle accident.* However, there is no statutory requirement for a hearing when an operator is to have his license suspended for an accumulation of 11 or more points for speeding convictions

---

* Act of January 24, 1966, P. L. (1965) 1497, sec. 1, 75 PS §619.1(n.).

or for an accumulation of 11 or more points for illegal passing convictions or for an accumulation of 11 or more points through a combination of the two types of convictions as is present in the case at bar. And there is no statutory requirement in The Vehicle Code for a departmental hearing after the assignment of points for summary traffic offense convictions when the assignment results in a total point accumulation of less than 11 points, so that no suspension is mandated by 75 PS §619.1(i), mandating that the secretary shall suspend a person's operator's license when that person's record shows an accumulation of 11 points or more.

Consideration must then be given to the latest declaration of the United States Supreme Court on the matter of the requirements of procedural due process in license suspension proceedings. In Bell v. Burson, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed.2d 90 (1971), it was held that the requirements of constitutional procedural due process required that before an uninsured motorist could have his license suspended under the provisions of the Georgia Motor Vehicle Safety Responsibility Act because of the involvement of the uninsured motorist in a motor vehicle accident, the uninsured motorist must be afforded the opportunity for a presuspension administrative hearing in order to litigate the issue of whether or not there was, in fact, a reasonable possibility of a judgment being rendered against the uninsured motorist for his fault in causing the accident. The court based its holding upon the conclusion that, since, under the Georgia statutory scheme, liability, in the sense of an ultimate judicial determination of responsibility for the accident, played a crucial role in the State's determination of whether or not to deprive an uninsured motorist of his license because of involvement in an accident, the State may not, consistently with due process, eliminate consid-

eration of the factor of fault in the administrative hearing held prior to the suspension of the license of the uninsured motorist.

In Bell v. Burson, supra, the court set forth in broad terms the constitutional rights of the owner of an operator's license. The court indicated that a State could bar the issuance of licenses to all motorists who did not carry liability insurance or who did not post security and that such a scheme would not be violative of the Fourteenth Amendment. However, the court concluded that this did not mean that the Fourteenth Amendment permitted a statutory scheme where not all motorists, but rather only motorists involved in accidents, are required to be insured or to post security under penalty of loss of license. In the latter case due process requires a proper hearing. At pages 541 and 542 of its decision, the court said:

"The hearing required by the 'Due Process Clause' must be 'meaningful' . . . , and 'appropriate to the nature of the case.' " (Citations omitted.)

In the case of Reese v. Kassab, 334 F. Supp. 744 (W.D. Pa., 1971), the Federal district court relied upon Bell v. Burson, supra, as authority for holding that an operator is entitled by due process to notice and an opportunity for an administrative hearing prior to the suspension of his operator's license under the provisions of the Pennsylvania "Point System" Act, 75 PS §619.1, the section of The Vehicle Code under which the secretary has directed that Rust's license be suspended for a period of 60 days. In the Reese case, supra, plaintiff contended that he was not guilty of the traffic violations for which points had been assessed under section 619.1 and that the fines and costs were paid on an information at variance with that for which the minor judiciary entered a conviction with respect to one of the traffic violations for which points had been assigned. Plaintiff Reese contended that his

license suspension had been unlawful because he had not been given a forum to argue these matters prior to the effective date of the license suspension. In Reese, supra, the Federal district court noted that the Commonwealth conceded that the "Point System" Act makes no provision for departmental administrative hearings at any time before the effective date of a license suspension mandated by the terms of that statute. Section 618(h) of The Vehicle Code provides that after notice of suspension any person may request a departmental hearing, but the court in the Reese case concluded that it is not the practice to notify the licensee of the availability of this opportunity. Similarly, judicial review of the suspension under section 620 of the code is provided only after suspension. The court in Reese concluded that this procedure fell far short of the constitutional requirements of procedural due process, citing Bell, supra. The Commonwealth contended that an administrative hearing prior to suspension under section 619.1 of The Vehicle Code was not required by due process because the action of suspension by the secretary under the statute is not discretionary but is mandatory, relying on Virnelson Motor Vehicle Operator License Case, 212 Pa. Superior Ct. 359 (1968). The Federal court pointed out, however, that even if the convictions upon which the accumulation of points is based cannot be contested at such a presuspension administrative hearing because of the holding in Virnelson, supra, there remains the possibility that the convictions were those of another person with the same name; that the fines and costs were paid on an information at variance with that for which the minor judiciary entered a conviction; that the points were improperly calculated; that credits were wrongfully withheld; or that there were errors on the report of conviction form; therefore, the Federal court in

Reese, supra, enjoined the secretary from suspending plaintiff's operator's license until plaintiff was afforded opportunity for an administrative hearing, not on the merits of the convictions or the legality of the point penalties imposed for each summary conviction, but on the narrow issues of whether or not he was, in fact, convicted of the violation for which points were assessed, whether the points were properly added by the secretary, or whether the records of his convictions are correct: Reese v. Kassab, supra, and the concurring opinion by Rosenburg, J., in Reese, supra, pages 748, 751-52.

In Virnelson, supra, it was held that by the most recent amendment to section 618(b)(2) of The Vehicle Code, the secretary has lost all discretion with respect to the motor vehicle violations set out at section 619.1(b). When the secretary receives a report of a conviction from any magistrate or court of record, as required under section 1209 of The Vehicle Code, he must enter the same on the record of the driver, assign the designated points specified in the schedule at section 619.1(b), and, if the accumulated points of the operator are 11 or more, he must then suspend that person's license as mandated by subsections (i) and (k) of section 619.1. Under section 620 of the code, the licensee can appeal the suspension to the court of common pleas which must take testimony and inquire into facts. But the court on this appeal may not review the facts behind the convictions giving rise to the assessment of points and may not litigate the points assigned by the secretary for such convictions. The court must limit itself on the appeal to an inquiry as to whether section 619.1 has been complied with and whether the calculation of points by the secretary is proper and the records of the secretary are correct.

It thus appears to this court that by the command of the United States Supreme Court in Bell v. Burson,

supra, the commands of procedural due process require that a driver be given an administrative hearing on the propriety of the secretary's record of his convictions and points prior to the time his license is suspended under section 619.1 of The Vehicle Code. See the opinion of Acker, J., in Commonwealth v. Collers, December term, 1971, no. 118.

However, in the case at bar, appellant Rust is asking this court to hold that he had a similar right to an administrative hearing after his first conviction in 1969, at which time the secretary assigned six points to his record, and after his second conviction in 1971, after which time the records of the secretary show that Rust had a total point accumulation of six points, in that prior to the 1971 conviction he had had three points removed from the original total of six, imposed by the secretary after his first conviction in 1969. We do not believe that Bell v. Burson, supra, compels such a holding, nor do we believe that Reese v. Kassab, supra, is authority for such a holding. Indeed, it would appear that Reese v. Kassab, supra, militates against us reaching such a conclusion.

In Reese, supra, plaintiff contends that he should have a presuspension administrative hearing because he had paid a fine and costs on an information at variance with that for which the minor judiciary entered a conviction and which the minor judiciary reported to the secretary. The Federal court held that due process required that plaintiff be afforded a hearing to present testimony on this matter. The conviction at issue in this claim of variance occurred more than one year prior to the next conviction which resulted in a total accumulation of 11 points mandating suspension. After the conviction concerning which plaintiff wanted a hearing to prove a fatal variance, plaintiff had only 10 points on his record, and, hence, no license suspension was mandated under the "Point System" Act.

Because the conviction at issue in Reese, supra, was not one which mandated suspension because of an accumulation of 11 points or more, and because the court in Reese held that plaintiff had a due process right to a presuspension hearing on the correctness of the secretary's records with respect to this early conviction, we read Reese as holding only that one whose license is to be suspended is entitled to a hearing after the secretary's records show an accumulation of 11 or more points, not before. Reese further seems to hold that at this presuspension hearing after the accumulation of 11 or more points, the driver can have the correctness of the secretary's record reviewed with respect to all prior convictions which resulted in the assignment of points to his record. Because of this due process right as prescribed in Reese, supra, there is no prejudice to the licensee in not affording him an opportunity for departmental hearing on the correctness of the secretary's calculation of points and the compliance with section 619.1 after each conviction.

In both Bell v. Burson, supra, and Reese v. Kassab, supra, the courts were analyzing the requirements of procedural due process when the State was about to terminate an entitlement, be it characterized as a "right" or a "privilege" of a citizen. The requirements of procedural due process are certainly much greater when a citizen faces imminent termination or suspension of an important interest, such as an operator's license, than when the State merely is assessing points against his driving record and the State action poses no immediate threat to the citizen's entitlement to an operator's license in that the citizen will only experience a threatened extinguishment of his interest if he accumulates additional points in the future. Moreover, as said above, the clear import of the opinion in Reese v. Kassab, supra, appears to give a driver facing license suspension because of an accumulation

of 11 or more points the due process right to challenge the compliance by the secretary with the statutory scheme of section 619.1 with respect to each and every one of the summary convictions which together have resulted in the secretary's compilation of an excessive number of points on the citizen's driving record.

### ORDER

And now, February 28, 1973, the appeal of Robert J. Rust is dismissed and he is directed to comply with the Bureau of Traffic Safety's order suspending his operator's privileges.

Appellant, Robert J. Rust, is granted exceptions to the findings of fact, conclusions of law and order of this court.