## PennDOT v. Hettich

*Lee C. Silverman, assistant counsel,* for PennDOT
*Joel P. Trigiani,* for defendant.

BIEHN, *P.J.,* September 21, 1994—The instant license suspension case has been remanded to this court by the Commonwealth Court. The Pennsylvania Department of Transportation, Bureau of Driver Licensing appealed to Commonwealth Court from our order sustaining the appeal of licensee. Commonwealth Court sustained in part and reversed in part our decision and remanded the matter for this court to consider any further issues not originally addressed.

The background of this case is as follows.

Licensee's driver's license was revoked by PennDOT for 61 years. This was the result of licensee entering a guilty plea to 16 counts of removal or falsification

of vehicle identification numbers, dealing in automobiles with removed or falsified vehicle identification numbers and receiving stolen property. Licensee was sentenced to 11 1/2 to 23 months with immediate work release.

As a result of the above, PennDOT issued 30 separate notices of revocation to licensee. Licensee took one appeal from the 30 notices and PennDOT objected. We allowed the single appeal and Commonwealth Court agreed that under the facts of this case, a single appeal was appropriate.

However, Commonwealth Court reversed on the issue of whether or not licensee should have been notified prior to entering his guilty plea of the revocation of his driver's license. The Pennsylvania Supreme Court has recently affirmed the principle that a license suspension is a collateral civil consequence of a conviction and therefore there is no requirement that a defendant be advised of a mandatory license suspension at the time of entering a guilty plea. *Commonwealth v. Duffey,* 536 Pa. 436, 639 A.2d 1174 (1994).

On remand, licensee now argues that PennDOT's 61-year revocation of his driver's license is such a grossly disproportionate sanction to the underlying offenses that it must be overturned as violative of due process.

PennDOT, on the other hand, stands by the revocations and relies on the habitual offender's statute which reads in part as follows:

*"Section 1542. Revocation of habitual offender's license*

*"(a) General rule.*—The department shall revoke the operating privilege of any person found to be a habitual offender pursuant to the provisions of this section. A

'habitual offender' shall be any person whose driving record, as maintained in the department shows that such a person has accumulated the requisite number of convictions for the separate and distinct offenses described and enumerated in subsection (b) committed after the effective date of this title and within any period of five years thereafter.

"*(b) Offenses enumerated.*—Three convictions arising from separate acts of any one or more of the following offenses committed either singularly or in combination by any person shall result in such person being designated as a habitual offender:

"(1) Any offense set forth in section 1532 (relating to revocation or suspension of operating privilege). ...

"*(d) Period of revocation.*—The operating privilege of any person found to be a habitual offender under the provisions of this section shall be revoked by the department for a period of five years.

"*(e) Additional offenses.*—Any additional offense committed within a period of five years shall result in a revocation for an additional period of two years." 75 Pa.C.S. §1542.

Based on the above, PennDOT issued two one-year revocations to licensee for violations of 75 Pa.C.S. §7102(b) and 75 Pa.C.S. §7103(b) pursuant to 75 Pa.C.S. §1532(a); one five-year revocation as a result of licensee's second conviction for violating 75 Pa.C.S. §7102(b) pursuant to 75 Pa.C.S. §1542(d); and 27 consecutive two-year revocations pursuant to 75 Pa.C.S. §1542(e), totaling 61 years. The 27 "add-on" revocations were for licensee's other convictions under 75 Pa.C.S. §§7102(b) and 7103(b), as well as his conviction for receiving stolen property, a violation of 18 Pa.C.S. §3925.

PennDOT is adamant that under the habitual offender's statute it had no discretion to do anything other than issue the above revocations. It also argues that the revocations must be served consecutively, not concurrently.

PennDOT argues that the law in this Commonwealth is clear that a license to drive is a privilege, not a right. PennDOT also points us to a recent case handed down by the Honorable Cynthia M. Weaver of this court in which, under similar circumstances, Judge Weaver upheld a 14-year revocation based on six convictions of violating 75 Pa.C.S. §7103(b). *Bergholtz v. PennDOT,* 64 Bucks Co. L. Rep. 295 (1994).

It has long been held in this Commonwealth that a motor vehicle operator's license is a mere privilege which allows its holder a limited right to use the public highways. *Commonwealth v. Funk,* 323 Pa. 390, 186 A. 65 (1936).

"It follows that the authority which granted the privilege in question retains the power to revoke it, either for due cause of forfeiture, or upon a change of policy and legislation in regard to the subject. The power of revocation cannot be pronounced unconstitutional, either as an impairment of a contractual right or as a deprivation of a property right." *Id.* at 397, 186 A. at 68.

However, over the years, a component of due process has crept into the law concerning license suspensions. In *Reese v. Kassab,* 334 F. Supp. 744 (W.D. Pa. 1971), the court dealt with the question of whether the Pennsylvania point system which provided for suspension of a driver's license without an administrative hearing violated the due process requirements delineated by the United States Supreme Court in *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

*"Bell v. Burson, supra,* makes it clear that even if denominated a privilege, as the Pennsylvania Court did in *Commonwealth v. Funk,* 323 Pa. 390, 186 A. 65 (1936), nevertheless an operator's license is not to be taken away by state action which fails to comply with procedures required by the Fourteenth Amendment. ...

"... As was said in the *Bell* case: '... it is fundamental that except in emergency situations (and this is not one) due process requires that when a state seeks to terminate an interest such as that here involved, it must afford notice and opportunity for hearing appropriate to the nature of the case *before* the termination becomes effective.' 402 U.S., at 542, 91 S.Ct., at 1591." *Reese v. Kassab,* 334 F. Supp. at 746-47. (emphasis in original)

We clearly recognize the difference between procedural and substantive due process. Although none of the cases have addressed substantive due process in this area thus far, the Fourteenth Amendment provides for both procedural and substantive due process. Obviously, the privilege of a driver's license has more "value" than some other privileges granted by the state. There is no reason why then, if Pennsylvania courts are willing to recognize an element of procedural due process in connection with the privilege of driving, that substantive due process should not likewise apply.

In the instant case, we are dealing with a question of substantive due process. "Such may be broadly defined as the constitutional guarantee that no person shall be arbitrarily deprived of his life, liberty or property; the essence of substantive due process is protection from arbitrary and unreasonable action." Black's Law Dictionary 1281 (5th ed. 1979).

"... Thus, it may be said that government's intrusion into a person's private affairs is constitutionally justified when the government interest is significant and there

is no alternate reasonable method of lesser intrusiveness to accomplish the governmental purpose. Whether there is a significant state interest will depend, in part, on whether the state's intrusion will effect its purpose; for if the intrusion does not effect the state's purpose, it is a gratuitous intrusion, not a purposeful one." *Denoncourt v. Commonwealth of Pennsylvania, State Ethics Commission,* 504 Pa. 191, 199-200, 470 A.2d 945, 949 (1983). (footnotes omitted)

We find in the present action that licensee has been denied substantive due process. The application of the habitual offender's statute has led to an arbitrary and unreasonable result.

There is no doubt that the state has an interest in regulating the use of public highways. However, the purpose of the habitual offender's statute is not being served by denying licensee the right to drive for 61 years. The habitual offender's statute is meant to penalize those individuals who repeatedly violate the Motor Vehicle Code.

Licensee engaged in criminal behavior. He should be and was punished. His license revocation, however, was so intrusive into his private affairs that it cannot be justified by the state's interest.

We distinguish this case from *Bergholtz, supra,* on the simple basis of the amount of time involved. A 14-year revocation is certainly burdensome; however, a 61-year revocation deprives a person for all practical purposes, from driving for the rest of his life.

Driving may be considered a privilege but in today's society, in many areas, it is a necessity. One of the aims of our system of justice is to rehabilitate and to return offenders to productive lives. If we deny licensee the right to drive for 61 years, we are undoubtedly eliminating his chances for such a life.

Accordingly, we enter the following order.

ORDER

And now, September 21, 1994, it is hereby ordered and directed that the revocation of licensee's driver's license for 61 years is set aside.